Mary F. CHAMPINE, Robert L. Crymes, Patricia A. Fuchs, Brian J. Mascari, Edward J. Marchewka and Sherry A. Weber, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,†

v.

MILWAUKEE COUNTY, a municipal corporation, Defendant-Respondent.†

Court of Appeals

*No. 04–1391. Oral argument February 01, 2005.—Decided March 15, 2005.*

2005 WI App 75

(Also reported in 696 N.W.2d 245.)

† Petition to review and petition for cross review both denied 6-1-2005.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *K. Scott Wagner* and *Jacques C. Condon* of *Hale & Wagner, S.C.* of Milwaukee. There was oral argument by *K. Scott Wagner.*

On behalf of the defendant-respondent, the cause was submitted on the brief of and oral argument by *Alan M. Levy* of *Lindner & Marsack, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J.    This appeal involves claims by a class ("Class") of current and former non-union salaried and management employees of Milwaukee County who assert that the County is liable to the Class for damages related to the 2002 amendment of MILWAUKEE, WIS., ORDINANCE ("M.C.G.O.") § 17.184, governing the use of non-union employees' accrued sick allowance at the time the employees retire. The Class argues that when the County amended M.C.G.O. § 17.184 in November 2000, and created more generous benefits for non-union employees, the County bound itself to provide those benefits, at a minimum, for the years 2001 through 2004, the years referred to in the ordinance. The Class argues the County is liable for damages to the Class because:   (1) the County breached a contract with members of the Class; (2) the Class's benefits became vested before the ordinance was repealed; (3) promissory estoppel prevents the County from reducing the adopted benefits during the stated period of the ordinance; and (4) the Class is entitled to relief under WIS. STAT. § 109.09, the wage claim statute.[1] The trial court granted summary judgment in favor of the County and dismissed the Class's claims. We affirm the judgment in part, reverse in part, and remand with directions that the trial court enter judgment consistent with this opinion.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## BACKGROUND

¶ 2.   On November 2, 2000, the Milwaukee County Board of Supervisors adopted a resolution/ordinance ("2000 Ordinance") that amended and added certain provisions to the M.C.G.O. pertaining to wages and other benefits.[2] The 2000 Ordinance, which the County Board staff and the Class refer to as the "2001–04 Wage & Benefit Package," applied to non-union employees. The introductory "Whereas" clauses make two references to "adjustments for non-represented employees and managers for 2001 through 2004." Some of the adjustments were more generous than previously provided; others were less generous. As pertinent to this case,[3] M.C.G.O. § 17.184 provided a more generous benefit relating to accrued sick allowance at retirement than had previously been available. This section of the 2000 Ordinance created a new section of the M.C.G.O., which did not mention either a beginning date or an ending date.[4]

---

[2] The resolution and ordinance totals sixteen pages. It contains specific salary percentage adjustments each year from 2001 through 2004. The provisions dealing with retirement generally identify their effective date as January 1, 2001, and make no mention of an ending date.

[3] Other lawsuits have been filed with respect to changes in wages and other issues. Those issues are not before us in this appeal.

[4] M.C.G.O. § 17.184, created in November 2000, provided:

**Sick Allowance Balance On Retirement**

(1) In the event membership in the Employes' Retirement System began prior to January 1, 1994, the member shall receive full payment of all accrued sick allowance at the time of retirement (total hour accrued times hourly rate at the time of retirement). Such payment shall be made in a lump sum, and shall not be

¶ 3. Specifically, before adopting the 2000 Ordinance, the County permitted non-union employees, upon retirement, to receive a cash payment for accrued sick allowance up to a maximum of four hundred hours,

included in the calculation of the member's final average salary for pension calculation purposes, nor shall such payment impact the member's total pension service credit or the date that retirement benefits will commence. If permissible under IRS provisions and requested by the member, such payment shall be transferred by the County to the Employe's Retirement System and paid to the member via a "back drop account" even though the member may not have opted for a "back drop pension benefit." In the event a member of the Employes' Retirement System who is eligible to retire dies prior to retirement, the full value of the member's accrued sick allowance shall be paid to the members spouse or the beneficiary of the member's retirement benefit.

(2) In the event membership in the Employees Retirement System began on or after January 1, 1994, the member shall have the full value of their accrued sick allowance at the time of retirement (total hours accrued times the hourly rate at the time of retirement) credited toward the cost of health insurance after retirement. Such health insurance coverage must commence within ten years of the member's retirement. When the amount credited is exhausted, the employee or eligible beneficiary may opt to continue their membership in the County Group Health Benefit Program upon payment of the full monthly cost as noted in 17.14(7) CGO. In the event a member of the Employes' Retirement System who is eligible to retire dies prior to retirement, the full value of the member's accrued sick allowance shall be credited toward the cost of continuing health insurance coverage for the members' spouse or beneficiary of the member's retirement benefit if such spouse or beneficiary was eligible for coverage prior to the member's death.

(3) At the time of retirement, members of the Employes' Retirement System who became members on or after January 1, 1994 and are not eligible for the accrual of sick allowance shall be credited with an amount equivalent to 60% of the total number of hours the member could have acquired had sick allowance been granted, solely for the purpose of determining a benefit under the provisions of this section.

609

plus sixteen hours for each one hundred hours or fraction thereof of accrued sick allowance in excess of four hundred hours. The 2000 Ordinance provided that the non-union employees could claim the full value of all of their accrued sick allowance at the time of retirement and it could either be credited towards the cost of health insurance for the employee after retirement, or paid to the retiree in cash, depending on the retiree's date of hire.

¶ 4.  After the 2000 Ordinance, numerous labor unions entered into collective bargaining agreements with the County. Those agreements contain essentially the same provisions. Those agreements remained in effect at times covered by the agreements and are not at issue in this appeal.

¶ 5.  In the months following the passage of the 2000 Ordinance, much public discussion concerning the generous nature of the benefits ensued. It was determined that the cost of the benefits was significantly more than originally described. Critics claimed the very generous benefits were excessive and had caused a serious budgetary shortfall. Ultimately, as a consequence of having supported the 2000 Ordinance, the County Executive resigned and several members of the County Board who supported the enhanced benefits were recalled. This prompted the County to explore whether it could rescind parts of the 2000 Ordinance, including the sick allowance increase and cash payout provisions.

¶ 6.  On February 21, 2002, the County adopted a new resolution/ordinance ("2002 Ordinance") that again altered certain benefits. The 2002 Ordinance was effective March 15, 2002. Under the 2002 Ordinance, non-union employees who have accrued sick allowance at

the time of their retirement may claim a maximum of only fifty days (four hundred hours), plus sixteen hours for each additional one hundred hours of accrued sick allowance. *See* M.C.G.O. § 17.184 (effective March 15, 2002). Essentially, this reinstated the maximums in place prior to the 2000 Ordinance.

¶ 7. According to the complaint, numerous employees responded to the negative publicity and the 2002 Ordinance by retiring earlier than they had originally intended, so as not to lose the more generous accrued sick allowance benefit (and perhaps other benefits) created by the 2000 Ordinance. By retiring before March 15, 2002, employees lost the income they would have earned and the increased credit toward pensions they would have received had they waited until their normal retirement date to retire. Other employees (who may or may not have been eligible to retire) remained employed and now seek confirmation of their entitlement to the enhanced accrued sick allowance under the 2000 Ordinance provisions.

¶ 8. This action followed in March 2002. The plaintiffs were certified as representatives of a class in November 2002; the Class contains approximately 1540 people. It includes non-union employees (1) who are or were actively employed by the County on March 15, 2002; or (2) who retired from employment with the County on or after January 1, 2002, and who demonstrate that they retired on or prior to March 15, 2002, (a) because they would not receive the retirement benefits available up to March 15, 2002, under M.C.G.O § 17.184 if they did not accelerate their retirement date in that manner, and (b) the early retirement caused a compensable loss to the employee.

¶ 9.    The amended complaint at issue in this appeal alleged numerous causes of action:    (1) declaratory judgment; (2) violations of Wisconsin's wage claim statute, Wis. STAT. § 109.09; (3) breach of contract; (4) promissory estoppel; (5) violation of home rule law; (6) unlawful taking of property; (7) violation of 29 U.S.C. § 623(a)(1)—age discrimination; and (8) punitive damages. In ruling on cross motions for summary judgment, the trial court dismissed all causes of action. This appeal followed. On appeal, the issues of age discrimination, unlawful taking of property, punitive damages and violation of home rule law were not substantially developed on briefs or during oral argument. Thus, we decline to consider those issues. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981).

## DISCUSSION

¶ 10.    "When called upon to review the denial of a summary judgment motion, we must apply the standards set forth in [Wis STAT. §] 802.08 . . . in the same manner as the trial court." *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296–97, 349 N.W.2d 733 (Ct. App. 1984). That methodology is well known, and need not be repeated here. *See* § 802.08; *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

¶ 11.    The Class claims that, as a matter of law, the County is liable for damages to the Class because:    (1) the County breached a contract with members of the Class; (2) the Class's benefits became vested before the ordinance was repealed; (3) promissory estoppel prevents the County from reducing the benefits; and (4) the Class members are entitled to relief under Wis.

STAT. § 109.09 because the amounts payable for accrued sick allowance are "wages" under the statute. How the damages are to be computed is not specified. We examine each of these claims in turn.

## I. Breach of contract

■

¶ 12.   To prevail on a breach of contract theory, the Class must establish that a contract existed, what the terms were, and that the County breached its duty to the Class under the contract. The Class claims that by amending M.C.G.O. § 17.184 in 2000, the County created a contract with the Class for wages and benefits for the entire period of 2001–2004. The Class asserts that its continued employment after the effective date of the 2000 Ordinance is acceptance of the contract, thereby binding both the Class and the County for the entire four-year period. Under the Class's theory, the County breached the contract by repealing the 2000 Ordinance.

¶ 13.   This court recently addressed the same contract issue in a companion case involving the same November 2000 resolution/ordinance. In *Dunn v. Milwaukee County*, 2005 WI App 27, No. 03–3525, we concluded that the 2000 Ordinance did not constitute a contract between the non-union employees and the County, and that the employees were, therefore, not entitled to wage increases in 2003 based on the 2000 Ordinance. *Id.*, ¶ 13. This court concluded that although it is possible to create a contract through legislation, *id.*, ¶ 8, the County had not created such a contract with the 2000 Ordinance, *id.*, ¶ 10. It had, however, in November 2000, created a unilateral promise as to pay and benefits. *Id.*, ¶ 13.

¶ 14.    This court has carefully examined the pleadings and arguments provided in this case and has concluded that the same reasoning and result set forth in *Dunn* control the outcome based on the facts here insofar as claims are made for the period after March 14, 2002. We conclude that when the County amended M.C.G.O. § 17.184 in 2000, it did not create a unilateral promise of benefits to the Class for any specific period of time beyond the time the promise remained in effect. The County, therefore, did not breach a contract or unilateral promise by prospectively amending its accrued sick allowance policy.

## II. Vesting

¶ 15.    The Class argues that its right to payment for all accrued sick allowance "vested" immediately. At the very least, the Class contends, its members are entitled to have all accrued sick allowance through March 14, 2002, paid out in full at retirement. The County argues that accrued sick allowance is an income protection program and is, therefore, not subject to vesting rules as if it were a pension. We conclude that those members of the Class who did not retire prior to March 15, 2002, are entitled, upon retirement, to a payout consistent with the terms of the 2000 Ordinance of their sick allowance that had accrued as of March 14, 2002, and is not used prior to retirement.[5]

---

[5] We express no opinion as to how post-March 14, 2002, use of accrued sick allowance or accrual of additional sick allowance is to be counted.

614

¶ 16.   Although an employee does not automatically have the right to be paid for accrued sick allowance, an employer may provide a payout provision. Where that occurs, as in this case, such a benefit represents a form of deferred compensation that is earned as the work is performed. The benefit can be changed, but only as it is related to work not yet performed. Our holding today is consistent with *Roth v. City of Glendale*, 2000 WI 100, 237 Wis. 2d 173, 614 N.W.2d 467, where our supreme court held that retirees had a vested right to fully-paid health insurance benefits pursuant to the terms of the collective bargaining agreements in force at the time of their respective retirements. *Roth* concluded:  "[A] vesting presumption applies under the collective bargaining agreements in the absence of contract language or extrinsic evidence indicating an intent against the vesting of retiree health benefits." *Id.*, ¶ 40. In *Roth*, as here, the effect of the court ruling is to prohibit retroactive changes in benefits already earned.

¶ 17.   The instant case does not involve health benefits or a collective bargaining agreement. Nonetheless, *Roth* is instructive. It is undisputed that from January 1, 2001, through March 14, 2002, eligible non-union County employees could choose to retire and, on retirement, receive a payout consistent with the 2000 Ordinance, M.C.G.O. § 17.184.[6] The only issue,

---

[6] When the County paid out retiring class members, the payments were based on all accrued sick allowance as of the date of retirement, including sick allowance the retiree accrued in the years prior to 2001. On appeal, the County did not argue that any payout should have been limited to sick allowance accrued between January 1, 2001, and the date of retirement. Consistent with this position, and the lack of any contrary

then, is whether the ability to be paid for all accrued sick allowance already earned is a benefit that could be taken away on March 15, 2002, after the employees had performed work while the promise was in effect, or whether that benefit attached itself to all hours accrued as of March 14, 2002. Just as the employees were entitled to, and received, pay increases for the work they performed during the time the wage increase was in effect, *see Dunn*, 2005 WI App 27, ¶ 3, they are also entitled to retain the benefit of an unlimited payout of sick allowance that accrued prior to the time that the new policy outlined in the 2002 Ordinance became effective. Once work is performed while a contract or unilateral promise is in effect, permitting retroactive revocation of that promise would be unjust and inequitable.

¶ 18.   Courts have rejected similar attempts by government entities to change the terms of compensation or benefits after the work has been performed. In *Kulins v. Malco*, 459 N.E.2d 1038, 1040–42 (Ill. App. Ct. 1984), at-will employees challenged an employer's decision to modify its severance pay policy, resulting in substantially decreased severance pay benefits. The court concluded:

> [T]he right to earn severance pay, a form of deferred compensation, arose and vested during the term of the 1967 policy and, consequently, survived the termination or modification of that policy. However, once the policy was modified on February 1, 1975, accrual under the 1967 policy terms ended. To hold otherwise would relegate the promise of severance pay to the illusory status of an offer revocable at the pleasure of the

language in M.C.G.O. § 17.184 (Nov. 2000), we conclude that the payout provision was not limited to only those hours accrued from January 1, 2001, through March 14, 2002.

616

corporation and result in a harsh forfeiture to loyal, long-term employees. While plaintiffs' continued employment . . . may have manifested acceptance of the terms of the 1975 policy, it cannot reasonably be said that their continued employment manifested their agreement to relinquish benefits earned prior to the modification. In making this determination, we emphasize that our decision does not affect the right of employers at will to modify severance pay provisions. It merely confines application of such modifications to prospective use only. In our opinion, this holding is in line with both reason and justice.

*Id.* at 1044–45 (citations omitted). Consistent with this reasoning, we conclude that those members of the Class who did not retire prior to March 15, 2002, are entitled, upon retirement, to a payout consistent with the terms of the 2000 Ordinance of their sick allowance that had accrued as of March 14, 2002, and is not used prior to retirement.[7] The dollar cost of this benefit can be reasonably estimated. That dollar amount is equal to the number of hours the Class member had accrued as of March 14, 2002, factoring in each employee's anticipated salary at the anticipated time of retirement and anticipated date of retirement. Any of the pre-March 15, 2002, sick allowance that is used prior to retirement will only reduce that liability.

¶ 19.    Our holding today does not forever bind the County to pay out all sick allowance that an employee will accrue in the future, and in that respect it is responsive to the concerns of the County that, in the absence of a collective bargaining agreement or employment contract, it should not be bound to continue

---

[7] Whether the payout takes the form of cash or reimbursement for health premiums depends on the employee's date of hire. *See* M.C.G.O. § 17.184 (Nov. 2000).

providing a benefit it now regrets offering. The ability to obtain payout for sick allowance accrued after March 14, 2002, may be modified prospectively by the County.

¶ 20.   In addition, we agree with the County that those members of the Class who retired prior to March 15, 2002, are not entitled to additional compensation. Each Class member who chose to retire prior to March 15, 2002, received a payout of all accrued sick allowance as of the date of retirement. Having consciously elected to take the then-available higher benefits, they are not now entitled to additional compensation, such as additional accrued sick allowance, additional credit toward retirement, or other benefits, which would have been available had they not chosen to retire. The Class cites no law that permits a retiree to claim simultaneously the benefits of retirement and continued employment by the same employer.

## III. Promissory estoppel

¶ 21.   Promissory estoppel has three elements: (1) the promise was one for which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise did induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965). The Class relies on promissory estoppel in support of its argument that it is entitled to payout for sick allowance accrued through December 31, 2004.

¶ 22. We hold that as to the work performed while the promise of the benefit was in effect, the elements of promissory estoppel have been satisfied and the employees are entitled to enforce the promise. As we have already concluded, the Class members who continued employment with the County while the promise was in effect are entitled to retain the accrued sick allowance benefit for the period of time prior to March 15, 2002. Those who retired prior to March 15, 2002, received the benefit already, and those who retired after March 14, 2002, or who will retire in the future, will receive it pursuant to the provisions of the 2000 Ordinance.[8]

¶ 23. However, we reject the Class's argument that it is entitled to apply the sick allowance policies in effect through March 14, 2002, to the remainder of 2002, 2003 and 2004. There is no evidence to support the Class's assertion that any member of the Class chose, before February 2002, to forego specific employment elsewhere in reliance on the expectation that the sick allowance benefit would continue through 2004. Without such evidence, summary judgment dismissing this claim for post-March 14, 2002, injury was proper.

---

[8] Following this court's release of the opinion on March 15, 2005, the Class moved for reconsideration, informing this court for the first time that some members of the Class retired after this case was filed. The parties agree that those Class members who retired after March 14, 2002, should not be treated differently than those who have yet to retire. Therefore, we have amended this opinion to reflect that those Class members, like the Class members who have not yet retired, have the right to a payout, consistent with the terms of the 2000 Ordinance, of their sick allowance that had accrued as of March 14, 2002, and was not used prior to retirement.

¶ 24. In addition, by remaining employed after February 2002, those Class members who had not retired accepted the modifications that became effective March 15, 2002. There is no basis to apply promissory estoppel for the period from March 15, 2002 through December 31, 2004.

## IV. Wage claim under WIS. STAT. § 109.03

¶ 25. The Class argues that its right to accrued sick allowance benefits is encompassed within Wisconsin's Wage Claim Act, WIS. STAT. ch. 109, and that it is entitled to the full payment of any and all accrued sick allowance under WIS. STAT. § 109.03. The Class argues that it is also entitled to a penalty of fifty percent of the unpaid "wages" because the County recklessly disregarded the Class's rights.

¶ 26. Exactly when it is, and to whom, that the accrued sick allowance should have been paid, but was not, is not explained. The Class members who have retired have received either cash or the equivalent value of health insurance. The amount of their accrued sick allowance could be calculated at the date of their retirement; it was not subject to further adjustment because of illness or continued work. That is not true of the Class members who have not retired. The value of their accrued sick allowance is an unknown factor until the date of their actual retirement because it depends on both the person's income at retirement and the remaining accrued sick allowance that person has earned and not used. All that is "owed" today is an accounting entry. No unpaid payment of cash is presently due.

¶ 27. Neither prior ordinances, the 2000 Ordinance, nor the 2002 Ordinance, gave any employee a right to current cash in exchange for any portion of accrued sick allowance while the person remained employed. Hence, the Class's reliance on WIS. STAT.

620

§ 109.03 is curious. The Wage Claim act defines wages as follows:

> "Wage" or "wages" mean remuneration payable to an employee for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, supplemental unemployment benefit plan payments when required under a binding collective bargaining agreement, bonuses and any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy.

Wis. Stat. § 109.01(3).

¶ 28. Because there do not appear to be any reported cases in Wisconsin dealing with application of this statute to relatively similar facts, the Class cites State Bar of Wisconsin, Wisconsin Employment Law § 11.51 (2004) in support of its argument that treatment of accrued sick allowance is included in Wis. Stat. § 109.01(3) as wages.[9] However, § 11.51 specifically deals only with accrued sick allowance at termination of employment. It makes no reference to any right to current payment for accrued sick allowance. The authors note:

> **B. [11.50] Required Payments and Benefits After Separation of Employment**
>
> **1. [§ 11.51] Wage Payments and Deductions from Wages**
>
> Wisconsin law requires that an employer pay a departing employee . . . who has no written contract for a definite period, all wages due on the earlier of the date on which the employee regularly would have been

---

[9] The Class cited the second edition of this resource. We have reviewed and print below information from the third edition, published in 2004.

paid ... or that required under section 109.03(1) ....

The term *wages* means remuneration payable to an employee as agreed upon by the employer and employee or provided pursuant to the employer's policy. Wages include salaries, commissions, accrued vacation or sick pay ....

. . . .

Questions frequently arise regarding the rights of departing employees to unused vacation, personal time off (pto) benefits, or sick pay .... Resolution of these claims depends on the parties' contractual agreement .... DWD generally takes the position that unused vacation and pto benefits, but not sick pay, are presumptively vested benefits that must be paid at the time of termination, absent language in the personnel policy to the contrary.

WISCONSIN EMPLOYMENT LAW, §§ 11.50–11.51 (underlining added; italics in original).

¶ 29.   The position of the County here is completely consistent with the reported position of DWD. The ordinance pays retiring employees the value of their accrued sick allowance, as determined at the time of retirement. That value is paid, in the sense that the retiring employee obtains an immediate benefit, at the time of retirement. No Class member has alleged any right to a present payment for accrued sick allowance, and the ordinances in question provide none. Having no right to current payment of accrued sick allowance, the Class states no cognizable claim for violation of WIS. STAT. § 109.03.[10]

---

[10] In its motion for reconsideration following this court's release of the opinion on March 15, 2005, the Class argued that its members who retired during the pendency of this action

## CONCLUSION

¶ 30.    Based upon the foregoing reasons, we reverse that portion of the judgment denying Class members who did not retire prior to March 15, 2002, the right to seek, upon retirement, a payout of their sick allowance, consistent with the provisions of the 2000 Ordinance, that had accrued as of March 14, 2002, and is not used prior to retirement. We affirm the remainder of the judgment and remand with directions that the trial court enter judgment consistent with this opinion. No costs on appeal.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

have a viable Wis. Stat. § 109.03 claim because the County did not pay them consistent with this court's ruling. The existence of Class members who retired after March 14, 2002, was not a fact developed at the trial court or addressed in the appellate briefing or at oral argument. We decline to attempt to apply § 109.03 to undeveloped facts, and without allowing a factfinder the opportunity to consider the issue. Whether those who retired after March 14, 2002, who were not given a payout of accrued sick allowance consistent with the 2000 Ordinance have a valid § 109.03 claim is an issue that needs to be addressed by a factfinder before we will consider it.