Judith Pᴀsᴋᴏ, Plaintiff-Respondent,

v.

Mɪʟᴡᴀᴜᴋᴇᴇ Cᴏᴜɴᴛʏ, Defendant-Appellant.†

Robert B. Pᴏʀᴛʜ, Plaintiff-Respondent,

v.

Mɪʟᴡᴀᴜᴋᴇᴇ Cᴏᴜɴᴛʏ, Defendant-Appellant.†

Court of Appeals

*Nos. 2012AP2256, 2012AP2257.*
*Submitted on briefs June 4, 2013.—Decided June 18, 2013.*

2013 WI App 91

(Also reported in 836 N.W.2d 461.)

† Petition for denied 11-26-13.

444

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■ ■■

On behalf of the defendant-appellant,the cause was submitted on the briefs of *Alan M. Levy* of *Lindner & Marsack, S.C.,* Milwaukee.

On behalf of the plaintiffs-respondents,the cause was submitted on the brief of *Jacques C. Condon and Michael F. Tuchalski of Nistler Law Office, S.C.,* Brookfield.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. This is a sick-leave-benefits case similar to the one we decided in *Champine v. Milwaukee County,* 2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245. Indeed, as the circuit court recognized, *Champine* is dispositive of the core issue.

■■

¶ 2. Milwaukee County appeals amended judgments in favor of Judith Pasko and Robert B. Porth, former Milwaukee County employees. The circuit court consolidated the matters pursuant to the parties' stipulation. Milwaukee County's notice of appeal in both cases recites that the circuit court erroneously: "[o]rdered the payment of Plaintiff's unused paid sick leave accrued prior to Plaintiff's voluntary promotion to [a] management position which did not offer that benefit[.]" Milwaukee County argues that: (1) until Pasko and Porth retired, it was free to modify the accrual of their sick-leave hours; (2) by accepting their managerial promotions, Pasko and Porth waived their right to some of their accrued sick leave; and (3) the circuit court should have ordered that Pasko's and Porth's use of sick leave be applied on a first-in, first-out basis, irrespec-

tive of how much sick leave they actually took during the "first-in" period. We review *de novo* the legal issues decided by the circuit court. *See Loth v. City of Milwaukee*, 2008 WI 129, ¶ 10, 315 Wis. 2d 35, 39, 758 N.W.2d 766, 768. The circuit court's findings of fact are invulnerable on appeal unless they are "clearly erroneous." WIS. STAT. RULE 805.17(2) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). We affirm and commend the circuit court for a well-reasoned and helpful written opinion.

## I.

¶ 3. Pasko started to work for Milwaukee County in July of 1987, and was represented by the Wisconsin Federation of Nurses & Health Professionals Union. In April of 2004, she accepted a management position for which she got a pay raise, and was no longer represented by the union. Pasko retired from her Milwaukee County employment in March of 2008.

¶ 4. Porth started to work for Milwaukee County in December of 1984, and was represented by the American Federation of State, County and Municipal Employees Local 882. In August of 2006, he accepted a management position for which he got a pay raise, and was no longer represented by the union. Porth retired from his Milwaukee County employment in July of 2010.

¶ 5. Before 2000, Milwaukee County permitted non-union employees to get paid for unused sick leave but capped the payment accumulation at four-hundred hours, plus sixteen-percent of any unused sick-leave hours exceeding four hundred. *Champine*, 2005 WI App

75, ¶ 3, 280 Wis. 2d at 609–610, 696 N.W.2d at 248. The four-hundred-hour cap was removed in 2000 by an ordinance that provided, as material, that those non-union members of the "Employes' [*sic*] Retirement System" whose "membership antedated "January 1, 1994," were to "receive full payment of all accrued sick allowance at the time of retirement (total hour[s] accrued times hourly rate at the time of retirement). Such payment shall be made in a lump sum." *Id.*, 2005 WI App 75, ¶ 3 & ¶ 2 n.4, 280 Wis. 2d at 609–610 & 608 n.4, 696 N.W.2d at 248 & n.4 (parenthetical in original). Effective March 15, 2002, the cap was restored by a new ordinance. As we explained in *Champine*: "Under the 2002 Ordinance, non-union employees who have accrued sick allowance at the time of their retirement may claim a maximum of only fifty days (four hundred hours), plus sixteen hours for each additional one hundred hours of accrued sick allowance." *Id.*, 2005 WI App 75, ¶ 6, 280 Wis. 2d at 610–611, 696 N.W.2d at 249.

¶ 6. Neither Pasko nor Porth were non-union employees before they accepted their managerial promotions and were thus not covered by the ordinances. Rather, their employment relationship with Milwaukee County was governed by union contracts that had, according to the joint stipulation of the parties to this appeal, "provisions substantially similar to the" 2000 ordinance applicable to non-union employees. The parties' stipulation agrees that the union contracts affecting both Pasko and Porth provided, as material: "Members of the Employees Retirement System, whose membership began prior to September 27, 1995 shall receive full payment of all accrued sick allowance at the time of retirement. Such payment shall be made in a lump sum." They also agree that, "[n]one of the union contracts were changed by the 2002 Ordinance." Nevertheless, Milwau-

kee County applied the four-hundred-hour/sixteen-percent-overage cap to all of Pasko's and Porth's sick-leave accruals when they retired. The parties stipulated:

- "At the time of retirement from the County, Pasko had accrued 1,426.2 total hours of unused sick leave."

- "Upon retirement, the County applied the 400–Hour Rule to *all* of Pasko's accrued sick leave, resulting in a payout for 576 hours of her 1,426.2 hours of accrued unused sick leave." (Emphasis in original.)

- "At the time of retirement, Porth had accrued 2163.5 total hours of unused sick leave."

- "Upon retirement, the County applied the 400–Hour Rule to *all* of Porth's accrued sick leave, resulting in a payout for 688 hours of his 2163.5 hours of accrued unused sick leave." (Emphasis in original.)

¶ 7. In granting judgment to Pasko and Porth, the circuit court determined, as material here, that:

(1) Pasko and Porth had vested rights in the sick-leave hours that they accumulated before they became non-union managerial employees.

(2) Pasko and Porth did not by accepting their promotions waive their contractual entitlement to the unused sick leave they accumulated before they became non-union managerial employees.

(3) Milwaukee County could not "assign[] sick leave usage to the earliest accrued hours" in Pasko's and Porth's accounts if they did not use the sick leave during that time, because that would "effectively be taking away the benefit that was earned while it accrued and went unused."

¶ 8. We address Milwaukee County's contentions in turn.

450

## II.

*A. Vested rights in accumulated sick-leave hours.*

¶ 9. The circuit court held that the sick-leave hours that Pasko and Porth accumulated under their unions' contracts with Milwaukee County vested as they were earned. Milwaukee County challenges this, arguing in essence that Pasko and Porth should not be able to bank those hours in order to get a cash payout at retirement because sick leave is designed to allow ill persons to stay home rather than go to work where they might not only infect others but also delay their recuperation. Milwaukee County ignores, however, that its contracts with the unions representing Pasko and Porth permitted precisely that. Although, as we have seen, Milwaukee County reinstated for non-union employees the four-hundred-hour/sixteen-percent-overage cap on the accumulation of sick-leave hours used to calculate the retirement payout, it did not do so in the union contracts under which Pasko and Porth worked before they were promoted to managerial non-union positions. Thus, the circuit court recognized that *Champine* required the conclusion that during their tenure under those union contracts, Pasko's and Porth's sick-leave hours accumulated uncapped and became vested as they were earned.

¶ 10. *Champine* concerned whether the 2000 Ordinance permitted the non-union employees: "to have all accrued sick [leave] allowance through March 14, 2002, [the day before the effective date of the 2002 ordinance that restored the four-hundred-hour cap] paid out in full at retirement." *Champine*, 2005 WI App 75, ¶ 15, 280 Wis. 2d at 614, 696 N.W.2d at 250. We held that it did, and that the employees were: "entitled, upon retirement, to a payout consistent with the terms

of the 2000 Ordinance of their sick allowance that had accrued as of March 14, 2002, and is not used prior to retirement." *Id.*, 2005 WI App 75, ¶ 15, 280 Wis. 2d at 614, 696 N.W.2d at 250–251. (Footnote omitted.) We further explained:

> Although an employee does not automatically have the right to be paid for accrued sick allowance, an employer may provide a payout provision. Where that occurs, as in this case, such a benefit represents a form of deferred compensation that is earned as the work is performed. The benefit can be changed, but only as it is related to work not yet performed . . .
>
> . . . The only issue, then, is whether the ability to be paid for all accrued sick allowance already earned is a benefit that could be taken away on March 15, 2002, after the employees had performed work while the promise was in effect, or whether that benefit attached itself to all hours accrued as of March 14, 2002. Just as the employees were entitled to, and received, pay increases for the work they performed during the time the wage increase was in effect, they are also entitled to retain the benefit of an unlimited payout of sick allowance that accrued prior to the time that the new policy outlined in the 2002 Ordinance became effective. Once work is performed while a contract or unilateral promise is in effect, permitting retroactive revocation of that promise would be unjust and inequitable.

*Id.*, 2005 WI App 75, ¶¶ 16–17, 280 Wis. 2d at 615–616, 696 N.W.2d at 251 (internal citation omitted).

¶ 11. *Loth* approved *Champine*'s vested-as-earned deferred-compensation analysis, noting that while the 2000 ordinance was in effect, the sick-leave hours earned by employees covered by the ordinance was the *quid pro quo* for their work as it was performed. *Loth*, 2008 WI 129, ¶ 46, 315 Wis. 2d at 53, 758 N.W.2d at 775 ("An employee accrues sick allowance (and may earn

452

the right to receive payout for the accrued sick allowance) gradually as the employee performs his or her work.") (parenthetical in original). *Loth* held that the *Champine* situation was thus different from what Albert Loth wanted: enforcement of the City of Milwaukee's post-retirement health-insurance obligation that he said was triggered when he had satisfied the fifteen-year employment eligibility threshold even though the terms of that obligation were later changed before he retired. *Loth*, 2008 WI 129, ¶ 13, 315 Wis. 2d at 40, 758 N.W.2d at 768.

¶ 12. *Loth* held, in contrast to *Champine*, where the employees earned their sick leave by their day-by-day work, and, critically, could make use of the sick-leave hours that they had thereby earned, that Loth was not entitled to the post-retirement health-insurance benefit until he had actually retired, which was the vesting trigger in that case. *Loth*, 2008 WI 129, ¶ 28, 315 Wis. 2d at 46, 758 N.W.2d at 771 ("The documents demonstrate that the City's no-premium-cost health insurance plan for retirees came into effect only when a management employee like Loth retired after attaining the age of 60 and having been in City service for at least 15 years."). Thus, unlike the situation in *Champine* and here, Loth's acceptance of the City's unilateral offer of post-retirement health-insurance was not his day-to-day work, but rather his retirement, and this permitted the City to alter the terms before that final acceptance. This is akin to the situation in *Champine* and here where Milwaukee County could prospectively change the sick-leave formula that would affect the day-by-day accumulation from the date of that change forward. *See Loth*, 2008 WI 129, ¶ 39, 315 Wis. 2d at 50, 758 N.W.2d at 773 ("The City is not attempting to modify any contractual obli-

453

gation to Loth. Loth did not accept the City's unilateral promise of no-premium-cost health insurance benefits; he had not fully performed the services entitling him to such benefits when the City amended in [*sic*] policy in 2002 effective in 2004."); *id.*, 2008 WI 129, ¶ 45 n.24, 315 Wis. 2d at 53 n.24, 758 N.W.2d at 774 n.24 (*Champine* "did not hold that the retired employees were entitled to receive full payout for any sick allowance *that they had accrued after the amended ordinance took effect on March 14, 2002*. [*Champine*] stated that '[t]he ability to obtain payout for sick allowance accrued after March 14, 2002, may be modified prospectively by the County.' " (citation of quoted source omitted)). That under Milwaukee County ordinances, an employee may forfeit his or her accumulated sick leave if he or she is either laid off for "in excess of two (2) years and one (1) day or [is no longer employed by the County because of] voluntary or involuntary separation," Milwaukee County Code of General Ordinances, § 17.18(3), does not mean that the accumulated sick leave is not otherwise vested, as Milwaukee County argues.[1] If Milwaukee County wanted to be able to modify the vesting trigger from a day-by-day accrual, as recognized by *Champine* to something else, and thereby preserve its freedom to make retroactive changes, it could have sought to do so in its contracts with the unions representing Pasko and Porth. It did not.

■

¶ 13. The circuit court correctly held that Pasko and Porth were entitled to accumulate uncapped sick-leave hours by virtue of the union contracts that

[1] Milwaukee County Code of General Ordinances, § 17.18(3) may be found at: http://library.municode.com/index.aspx?client Id=12598 (last visited June 10, 2013).

governed their work for Milwaukee County before they accepted promotion to non-union managerial positions, and that those accumulations vested before they took their non-union management positions.

### B. *Alleged waiver.*

¶ 14. Although Milwaukee County could have conditioned the offer of promotions to Pasko and Porth on their acceptance of the four-hundred-hour cap retroactive to the period during which they were entitled to accumulate uncapped sick leave by virtue of the unions' contracts with Milwaukee County, Milwaukee County did not do so. Now, having let that opportunity slip from its fingers, Milwaukee County seeks to impose waiver to accomplish that result. "[W]aiver," of course, "is the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 670, 761 N.W.2d 612, 620 (quoted source and quotation marks omitted). "Although the waiving party need not intend a waiver, he or she must act intentionally and with knowledge of the material facts." *Nugent v. Slaght*, 2001 WI App 282, ¶ 13, 249 Wis. 2d 220, 227–228, 638 N.W.2d 594, 597; *Attoe v. State Farm Mutual Automobile Ins. Co.*, 36 Wis. 2d 539, 545, 153 N.W.2d 575, 579 (1967) ("Waiver has been defined as a voluntary and intentional relinquishment of a known right. However, in establishing waiver, it is not necessary to prove an actual intent to waive. Such waiver may be shown by conduct.") (footnotes omitted).

¶ 15. "[D]eterminations of waiver generally present mixed questions of fact and law." *All Star Rent A Car, Inc. v. Wisconsin Department of Transportation*, 2006 WI 85, ¶ 15, 292 Wis. 2d 615, 626, 716 N.W.2d 506,

511. As noted earlier, a circuit court's findings of fact are invulnerable on appeal unless they are "clearly erroneous." *See* Wis. Stat. Rule 805.17(2). We review *de novo* whether the circuit court based its findings on a correct legal analysis. *See All Star Rent A Car*, 2006 WI 85, ¶ 15, 292 Wis. 2d at 626, 716 N.W.2d at 511.

■■■■

¶ 16. The circuit court applied the correct intentional-relinquishment-of-a-known-right analysis, and recognized that although "waiver" does not require a specific intent to give up a known right, the act alleged to be a waiver must be intentional and with knowledge. Further, the circuit court also recognized, as it wrote in its opinion, that the "knowledge of facts, which is a necessary element of waiver, may be constructive or actual. *Attoe v. State Farm Mut. Auto. Ins. Co.*, 36 Wis. 2d 539, 546, 153 N.W.2d 575[, 579] (1967). Constructive knowledge 'is that which one who has the opportunity, by the exercise of ordinary care, to possess.' *Id.*"

¶ 17. In rejecting Milwaukee County's contention that Pasko and Porth waived their rights to the un-capped sick leave to which they were entitled under their unions' contracts with Milwaukee County, the circuit court found both: (1) that Milwaukee County did not show that either Pasko or Porth intentionally gave up their right to the accumulated non-capped sick leave, and also (2) that they did not have the requisite knowledge, actual or constructive, from which that relinquishment could be found. The circuit court explained:

> Just because Ms. Pasko and Mr. Porth may have known about the 400–Hour-Rule [applicable to non-union employees covered by the 2002 Ordinance], the County failed to prove that Ms. Pasko and Mr. Porth knew that if they took promotions, they would waive their rights to the [earned] sick leave that [they] had already accrued and vested with them while they were union employees.

Indeed, to even suggest otherwise, would impose the burden of speculative crystal-ball gazing to divine what others might argue down the road was "waiver." This is especially true here because Pasko and Porth could reasonably assume that *Champine* governed the earned/vesting issue in connection with uncapped sick-leave accumulations, and that their acceptance of a promotion that *then* bound them to the four-hundred-hour cap, would not put them at risk of having to retroactively give up the vested sick-leave hours that they had already earned.

¶ 18. Nevertheless, apparently recognizing that the circuit court's findings of fact cannot seriously be challenged by virtue of Wis. Stat. Rule 805.17(2), which its briefs do not even cite, Milwaukee argues *implied* waiver: "By accepting their promotions *without saying anything about the sick leave allowance reduction or their retention of the union version,* they waived whatever right they now claim to a larger sick leave allowance." (Emphasis added.) As we have already noted, however, *if* Milwaukee County wanted to condition Pasko's and Porth's promotions on their retroactive acceptance of the four-hundred-hour cap, Milwaukee County could have done so. It did not, and the circuit court did not err in concluding that neither Pasko nor Porth waived their right to the earned and vested sick leave they accumulated while still working for Milwaukee County under their unions' contracts with the County.

 *C. Apportioning sick leave in calculating the final payout at retirement.*

¶ 19. As we have seen, Pasko and Porth accumulated unused sick leave (1) during their employment by

Milwaukee County under the union contracts; and (2) during their employment by Milwaukee County as non-union managerial employees. In assessing how much Milwaukee County owed them at retirement for their unused sick leave, Milwaukee County wanted to deduct their sick-leave starting with their non-managerial employment. As phrased by the circuit court: Milwaukee County sought "application of a 'First In, First Out' " calculation, which would "assign[] sick leave usage to the earliest accrued hours in the employee's account." Again, as phrased by the circuit court, Milwaukee County claimed that this was its " 'customary practice.' " Pasko and Porth, however, argued that they were entitled to, again as phrased by the circuit court, "a damages calculation that takes the amount of sick leave hours that accrued and vested as a union employee, multiplied by the hourly rate, added to the amount of hours accrued as a non-union employee under the 400–Hour rule. Then, the monies already paid would be subtracted from the total." The differences in the amounts payable were: Pasko—$21,779.63 under her calculation method versus $16,136.41 under Milwaukee County's; Porth—$30,174.18 under his calculation method versus $30,046.12 under Milwaukee County's. The circuit court adopted the calculation method sought by Pasko and Porth.

¶ 20. As the circuit court recognized, when *Champine* determined that the non-union employees covered by that decision, "who did not retire prior to [March 15, 2002,] [a]re 'entitled, upon retirement, to a payout consistent with the terms of the 2000 Ordinance of their sick allowance that had accrued as of March 14, 2002, and *is not used* prior to retirement,' " *see id.*, 2005 WI App 75, ¶ 15, 280 Wis. 2d at 614, 696 N.W.2d at

458

250–251, *Champine* took no position "as to how post-March 14, 2002, use of accrued sick allowance or accrual of additional sick allowance is to be counted[,]" *see id.*, 2005 WI App 75, ¶ 15 n.5, 280 Wis. 2d at 614 n.5, 696 N.W.2d at 251 n.5. The circuit court noted, however, that all the plaintiffs in *Champine* were non-union employees subject to the ordinances and thus *Champine* "never [had to] consider[] what pool of accrued sick leave time (union vs. non-union) used days would properly be depleted from." (Parenthetical in original.)

¶ 21. The circuit court declined to rule whether the first-in, first-out method "is actually the County's 'customary practice,' " as Milwaukee County asserted. Rather, the circuit court concluded that to allow that method to invade the sick leave Pasko and Porth accumulated while they were working under the no-cap provisions of their unions' contracts with Milwaukee County, which became vested as they earned that sick leave, "would effectively be taking away the benefit that was earned while it accrued and went unused [by Pasko and Porth] as union employees." The circuit court thus distinguished the situation in *Champine,* where the parties after remand agreed to a first-in, first-out apportionment, from this case, where the method's "application across two categories of employment (non-union and union) would essentially divest Plaintiffs of their more valuable union-accrued sick leave, for work they did as non-union employees." (Parenthetical in original.) Whether our review is *de novo* or deferential, we agree.

■■■

¶ 22. First, the *Champine* parties' post-remand settlement is not binding, especially since we do not have a full mosaic of the competing interests that were

negotiated. Second, and critically, as the circuit court reasoned, permitting invasion of the sick leave that Pasko and Porth earned by virtue of their unions' contracts with Milwaukee County for sick-leave hours that they did not take during their tenure as union-represented employees, would undo that vesting. We affirm the circuit court's resolution of this issue as well.

*By the Court.*—Judgments affirmed.