Albert LOTH, Plaintiff-Appellant,

v.

CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 2007AP587. Submitted on briefs November 6, 2007.
—Decided December 27, 2007.*

2008 WI App 12

(Also reported in 745 N.W.2d 693.)

---

† Petition to review granted 5/13/08.

413

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James W. Greer* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alan M. Levy* of Lindner & Marsack, S.C. of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Albert Loth appeals from the circuit court order granting the City of Milwaukee summary judgment, dismissing his complaint, and denying his motion for summary judgment declaring the City had breached its contract with him when it adopted a resolution reducing the retirement benefits to which he would have been entitled at retirement under the earlier resolution. We conclude that the circuit court did not correctly apply controlling legal precedent, thus we reverse and remand for further proceedings.

## Background

¶ 2. Loth was hired as an accountant by the City of Milwaukee in November 1984. He was born in April 1945. Loth was a management employee and was never covered by a collective bargaining agreement during his tenure with the City. At the time he was hired, Loth was provided with a handbook that explained certain benefits which would be available to him when he retired. The handbook stated:

(7) MEDICAL AND DENTAL INSURANCE

1. *Eligibility:*

. . . .

d. Normal Pension Retirement: Employees in active service who retire on normal pension with at least 15 years of creditable service will be entitled to the medical benefits so long as they are at least age 60 and less than age 65. The earliest date that an eligible retiree may become covered by the medical benefits will be the first of the month next following the retiree's 60th birthday, and the last date of coverage will be the last day of the month prior to the month in which the retiree becomes 65.

. . . .

4. 1983 Cost of Coverage – Medical Benefits:

. . . .

Normal Pension Retirement . . .*

*(General City retirees 60–65 with at least 15 years' service are entitled to City paid health insurance which includes their eligible dependents.)

(Capitalization and underlining in original.)

¶ 3. At that time, an additional City handbook, entitled "Policies and Procedures for Health and Dental

Plans," and identified as coming from the City of Milwaukee Department of Employee Relations, Employee Benefits Division, advised that:

## COVERAGE FOR RETIREES, DISABILITIES AND SURVIVING SPOUSES

Current City rules provide for City-paid (free) health coverage for general City retirees with a normal service retirement, age 60 to age 65, provided they have at least 15 years of City service . . . .

(Bolding in original.)

¶ 4. These handbooks explained the substance of a resolution in effect at the time, which had been adopted in 1973 by the City of Milwaukee Common Council. The resolution stated:

Resolution relating to coverage for retirees with respect to health insurance.

*Whereas.* The City is desirous of extending without cost to retirees health insurance provided by Blue Cross-Blue Shield and Major Medical to certain retirees; now, therefore, be it

*Resolved.* By the Common Council of the City of Milwaukee that there shall be and is extended all present health insurance provided by Blue Cross-Blue Shield and Major Medical to general city employes who retire after January 1, 1974, and who meet all of the following qualifications:

1) Are between the ages 60–65;

2) Who have 15 or more years of city service; and

3) Who retire under the general city retirement system with an unreduced "retirement allowance;" and, be it

*Further Resolved.* That a surviving spouse of such retired employe shall be accorded the same benefits as she would have been eligible for under the present system; and, be it

*Further Resolved.* That all benefits for such coverage as provided for in this resolution shall be paid for by the City.

City of Milwaukee Resolution 73–216 (italics and arrangement in original). By November 1999, Loth had worked continuously for the City for fifteen years.

¶ 5. In the face of rising health insurance costs, in July 2002, the Common Council adopted Resolution 020479 to take effect January 1, 2004. This resolution significantly changed the health insurance benefits available to management retirees who had worked for the City for fifteen years by eliminating the City's obligation to pay for insurance for any general management retirees.[1] The 2002 resolution provides, in relevant part:

Whereas, The City of Milwaukee currently provides that General City Management employees who select retirement, those 55 years of age with 30 years of service or those 60 years of age with 15 years of service, can select any health insurance plan the City offers at no cost until they reach 65; and

. . . .

Whereas, The City currently, in 2002, charges active Management Employees $100 for single coverage in the Basic Plan or $190 for family coverage in the Basic Plan; and

---

[1] Some provisions, not relevant to Loth, continued to provide for retiring fire and police department employees pursuant to separate agreements covering those departments.

Whereas, The costs for both the City HMO health insurance and the self-funded City Basic Plan continue to increase significantly; and

Whereas, Few other employers provide early retirees with full health insurance coverage till 65 at no cost; now, therefore, be it

Resolved, That the City of Milwaukee rate structure for health insurance for all Management Employees who retiree [sic] on or after January 1, 2004, be the same as it is for active Management Employees.

¶ 6. Loth reached age sixty on April 12, 2005, and retired on April 23, 2005. The City deducted health insurance premiums beginning with his first retirement check and continuing throughout these proceedings.

¶ 7. Loth sued, alleging breach of contract and promissory estoppel. He requested monetary damages, declaratory relief, and an injunction. The City denied liability, claiming that because Loth had not reached age sixty when it changed the benefits in the 2002 ordinance, Loth had not satisfied the conditions necessary to receive the previous promise of health insurance at no cost. Both parties moved for summary judgment. The trial court granted the City's motion, and dismissed Loth's complaint. It denied Loth's motion. This appeal followed.[2]

### Standard of Review

¶ 8. We review *de novo* the trial court's grant or denial of summary judgment. *Green Spring Farms v.*

---

[2] Loth did not pursue his claim of promissory estoppel on appeal. Consequently, that issue is abandoned. *State v. Johnson*, 184 Wis. 2d 324, 344, 516 N.W.2d 463 (Ct. App. 1994).

*Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Further, while the trial court's decision whether to grant declaratory relief is discretionary, we review *de novo* questions of law involved in that decision. *Commercial Union Midwest Ins. Co. v. Vorbeck,* 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665.

¶ 9. This dispute centers on whether certain retirement benefits vested under the terms of an existing resolution, and whether those benefits, once vested, could be withdrawn by a later resolution. There is no substantive difference between a resolution and an ordinance, *Cross v. Soderbeck,* 94 Wis. 2d 331, 343, 288 N.W.2d 779 (1980), and we therefore interpret a resolution in the same manner as an ordinance. The interpretation of an ordinance, like statutory interpretation, presents a question of law, which we review *de novo. Hillis v. Village of Fox Point Bd. of Appeals,* 2005 WI App 106, ¶ 6, 281 Wis. 2d 147, 699 N.W.2d 636. Interpretation of contracts is also a question of law which we review *de novo. See Roth v. City of Glendale,* 2000 WI 100, ¶ 15, 237 Wis. 2d 173, 614 N.W.2d 467 (The proper interpretation of collective bargaining agreements and whether they vest a legal right of the retirees to fully-paid lifetime health benefits is reviewed, as with other contracts, as a question of law.).

### Analysis

*I. Right to benefits*

¶ 10. Wisconsin law has long enforced the rights of employees, who have performed the work required, to receive benefits unilaterally promised for such work as against an employer's attempt to revoke the benefit

after the work has been performed. In 1912, our supreme court held, in *Zwolanek v. Baker Manufacturing Co.*, 150 Wis. 517, 137 N.W. 769 (1912), that a profit-sharing plan unilaterally adopted by an employer is "the offer of a reward to employe[e]s for constant and continuous service," *id.* at 521, and explained that "[p]erformance constitutes acceptance of the offer, and after performance it cannot be revoked, so as to deprive a person who has acted on the faith thereof of compensation," *id.* at 523. The court also explained that while an employer may withdraw the offer, it may not, by subsequent withdrawal, deprive the person who has already performed the requested service of the originally promised reward. *Id.* at 523.

> (While a mere offer, not assented to, does not constitute a contract, an acceptance of the terms of an offer of a reward by any person who complies therewith by performing the service creates a complete and valid contract, provided the performance takes place prior to the withdrawal of the offer.

(citation and quotation marks omitted)).

¶ 11. In 1977, the non-revocability of an earned benefit, i.e., profit-sharing, was again enforced when an employer modified the plan which allowed the forfeiture of all benefits if the former employee took a job competing with the employer. *Rosploch v. Alumatic Corp. of Am.*, 77 Wis. 2d 76, 251 N.W.2d 838 (1977). The court noted the similarity between pension and profit-sharing plans and held that:

> to hold that [the employer] could impose the no-competition amendment as an additional condition upon [the employee]'s contractual right, after he had earned his account by virtue of his performance, is tantamount to saying that benefits under the plan were

420

merely a gratuity. That view of pension and profit-sharing plans has long been inconsistent with Wisconsin law.

*Id.* at 87. This policy and reasoning was reconfirmed in 1978, in *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978), where the court enforced a promise of employer-paid life insurance for salaried employees at retirement after age sixty-five against a company claim that it had the right to change the insurance benefit for those who had retired, and that employees who retired before age sixty-five were not eligible for the benefit. *Id.* at 238. The court explained that the vesting of rights to future rewards depends upon the work the employee performed, not on the employee reaching a particular age.

> Nor is it material that some members may have retired before reaching age sixty-five. The rights of the employees under the plan vested on their providing the services required by Allis-Chalmers; attaining age sixty-five was simply a condition precedent under the terms of the contract. In short, these differences do not matter.

*Id.*

¶ 12. Later, in *Roth v. City of Glendale*, the court applied the same rationale explained in *Schlosser* to claims by retired City of Glendale employees for City-paid health insurance under a series of twelve successive collective bargaining agreements. *Roth*, 237 Wis. 2d 173, ¶¶ 1, 30–32. The court adopted a presumption that vesting of retirement rights occurs when the work is performed during the contract period, unless there is contractual language or extrinsic evidence indicating otherwise. *Id.*, ¶¶ 25–26. In its decision, the court noted the importance of retiree health benefits and the relevance of the *Schlosser* analysis—"*Schlosser* was not decided on the singularity of the facts but rather

on general equitable principles underlying the employer-employee bargaining process," *Roth*, 237 Wis. 2d 173, ¶ 31—and observed that:

> Allowing employers to modify past contractual obligations, when there is no indication that benefits are for a fixed term only, renders the promise of retirement benefits illusory and defies these equitable principles.
>
> An economic consideration that cannot be swept under the rug is that many retirees live solely on their retirement benefits. Retirees with fixed incomes are generally ill-prepared to meet additional financial obligations that were unanticipated and that may be incrementally modified without notice.

*Id.*, ¶¶ 32–33.

¶ 13. More recently, in *Dunn v. Milwaukee County*, 2005 WI App 27, 279 Wis. 2d 370, 693 N.W.2d 82, this court affirmed the corollary principle that a public employer may change the wages of non-represented employees prospectively by repealing the last year of a previously adopted multiple-year wage increase ordinance. *Id.*, ¶¶ 3, 21, 27. Significant to our holding in *Dunn* was the fact that the employees were informed before the year began that the earlier announced wage rates would not be paid. *Id.*, ¶ 17. In so holding, we distinguished the *Schlosser* line of retirement cases, noting that those cases "involve employees whose compliance with requirements for promised benefits was complete at a time when the employer's promise was still in place." *Dunn*, 279 Wis. 2d 370, ¶ 17. In a subsequent case, however, *Champine v. Milwaukee County*, 2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245, *review denied*, 2005 WI 134, 282 Wis. 2d 722, 700 N.W.2d 273, we enforced the promised benefit for those who had performed the work before the promised benefit was withdrawn.

¶ 14. In *Champine*, we resolved a claim by non-union employees of Milwaukee County that they were entitled to certain future retirement benefits which were repealed before the represented class of employees had retired. *Id.*, ¶ 1. All of the represented class worked for Milwaukee County before, during, and after the period when those benefits were in effect. *Id.*, ¶ 7. The County argued that the class members were not entitled to the disputed benefit because they had not retired before the benefits were withdrawn. *Id.*, ¶ 15. We rejected that argument. *Id.*, ¶ 17. We held that benefits could not be changed retroactively—i.e., after an employee has satisfied all of the work requirements during the period when the benefits were in effect. *Id.* We explained: "[T]hose members of the Class who did not retire prior to March 15, 2002, are entitled, upon retirement, to a payout consistent with the terms of the 2000 Ordinance of their sick allowance that had accrued as of March 14, 2002, and is not used prior to retirement." *Id.*, ¶ 18.

¶ 15. The disputed benefits at issue in *Champine* were enhanced sick leave retirement benefits adopted by the County Board in 2000 and repealed in February 2002 (repeal effective March 15, 2002). *Id.*, ¶¶ 2, 6. The affected plaintiffs were still County employees on March 14, 2002.[3] *Id.*, ¶ 8. Because, as we have seen, a retirement benefit "represents a form of deferred compensation that is earned as the work is performed," we concluded that "[t]he benefit can be changed, but only as it is related to work not yet performed." *Id.*, ¶ 16. This is because "[o]nce work is performed while a contract or unilateral promise is in effect, permitting

---

[3] The class also included a limited group of retirees; their claims are not relevant to our discussion here.

retroactive revocation of that promise would be unjust and inequitable." *Id.*, ¶ 17.

¶ 16. The principles we discussed in *Champine* apply equally here. The promise of specific retirement benefits, conditioned on performing specific work, is a form of deferred compensation. Once that work has been performed, those promised future benefits can no more be unilaterally withdrawn than can wages be reduced after the work is done. To hold otherwise would, as we have previously noted, be both unfair and unjust. It would also be contrary to long-established Wisconsin law. *See Zwolanek*, 150 Wis. at 523. Future benefits can be changed, but only for work that has not yet been performed.

¶ 17. Our holding in *Champine* controls the outcome of this case. Here, when Loth accepted employment with the City, the work to be performed to obtain the health insurance benefit had two characteristics: the work was to be done as a general City employee (not a union member), and the work was to be done for a minimum of fifteen years. City of Milwaukee Resolution 73–216. When Loth accepted employment with the City, his right to normal retirement did not exist until he reached age sixty.[4] As to normal retirement, attaining age sixty was truly a condition precedent. However, at the time he was hired, he would complete fifteen years of continuous service well before he reached retirement age. If we construe Resolution 73–216 as the City urges, that is, the City could withdraw its promise after its employees had performed the requisite fifteen years of work, the promise that after normal retirement, health

---

[4] Although earlier retirement was permitted because of disability, that was a circumstance specifically excluded from the City-paid health insurance provision at issue here. *See* City of Milwaukee Resolution 73–216.

insurance will paid by the City while the retiree is between the ages sixty and sixty-five was an illusory promise. As we have explained, such a construction is inconsistent with controlling Wisconsin law, which we are required to follow. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (court of appeals may not overrule, modify, or withdraw language from its published opinions).

¶ 18. At the time Loth was hired by the City of Milwaukee, he was informed of this retirement benefit. He was provided with copies of City of Milwaukee employee handbooks which detailed the insurance coverage benefit and the age requirements and work service requirements necessary to receive these benefits after normal retirement from City employ. A handbook may alter an at-will employment relationship. *Ferraro v. Koelsch*, 124 Wis. 2d 154, 165, 368 N.W.2d 666 (1985). In *Ferraro*, our supreme court concluded that, as a matter of law, representations made in an employee handbook may modify an employment at-will relationship. *Id.* at 157–58. This employment relationship may only be altered, however, "if the manual contains express provisions from which it reasonably could be inferred that the parties intended to bind each other to a different relationship." *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 979, 473 N.W.2d 506 (Ct. App. 1991).

¶ 19. *Ferraro* involved a claim of wrongful discharge from employment based on the failure of the employer to utilize the policies set forth in its employee handbook. *Id.*, 124 Wis. 2d at 163. The court held that an employee handbook abrogated the at-will employment relationship when the handbook included the following: (1) the employee's acknowledgement and acceptance of the handbook's rules and policies as a condition

of continued employment; (2) discharge only for just cause; (3) mandatory progressive discipline procedures; (4) seniority-based lay-off procedures; (5) distinctions between probationary and other employees; and (6) the expectation that employees provide a two-week notice when leaving employment. *Id.* at 158–60. However, these factors do not need to be in absolute alignment for a court to determine that an express contract has been created within an employment relationship. *Wolf v. F & M Banks*, 193 Wis. 2d 439, 453, 534 N.W.2d 877 (Ct. App. 1995). Rather, "[e]ach case must be examined in light of its particular facts." *Id.*

¶ 20.　Here, the City passed a resolution in 1973 conferring the retirement benefit consisting of: the payment of health insurance premiums for the period of time (age sixty to sixty-five); at the full cost of health insurance coverage; for employees who had fifteen years of service completed; and who took normal retirement (age sixty or older). The City expressly incorporated this resolution into its employee handbooks and provided these handbooks to Loth during his employment with the City. The City paid these benefits to all retirees who completed this time of service requirement as set forth in the handbooks. "It is black letter law that a promise for a promise, or the exchange of promises, will constitute consideration to support any contract of this bilateral nature." *Ferraro*, 124 Wis. 2d at 164. Accordingly, it can reasonably "be inferred that the parties intended to bind each other" regarding this benefit. *See Bantz*, 163 Wis. 2d at 979.

¶ 21.　In 2002, the City passed a new resolution limiting the health insurance benefits for retirees, effective March 2004. By 2002, Loth had already completed more than fifteen years of service with the City, thereby

completing his service requirement to qualify for this benefit, i.e., the City had received its consideration. Accordingly, Loth is entitled to have the City perform on its promise as expressed in the handbooks' provisions.

*II. Injunction*

¶ 22. To be entitled to an injunction, "a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff," *Pure Milk Prods. Coop. v. National Farmers Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979), and that there is the threat of irreparable injury that cannot be compensated with a remedy at law, *American Mut. Liab. Ins. Co. v. Fisher*, 58 Wis. 2d 299, 305, 206 N.W.2d 152 (1973). Money damages are a remedy at law. Loth can be made whole by damages, the amount of which can be determined by the circuit court.

### Conclusion

¶ 23. We reverse the summary judgment awarded to the City. Loth is entitled to summary judgment based on the City's breach of its obligation to pay his health insurance premiums according to the terms of the 1973 ordinance and related City publications referred to herein, after he retired until he reached age sixty-five. We remand to the circuit court for determination of the total health insurance premiums deducted from Loth's pension benefits during the period described above, together with interest thereon, for entry of a declaratory judgment pursuant to WIS. STAT. § 806.04 (2005–06) declaring Loth's rights consistent with this opinion, and for such other relief as may be appropriate.

*By the Court.*—Order reversed and cause remanded.

¶ 24. CURLEY, P.J. (*dissenting*). I respectfully dissent. I would adopt the trial court's thoughtful decision in which the court painstakingly sets out the flaw in Loth's logic and distinguishes his circumstances from those of the cases he cites. The bottom line is that Loth did not qualify for the no-premium-cost health insurance when the City adopted the 2002 resolution. The original resolution read:

> *Resolved.* By the Common Council of the City of Milwaukee that there shall be and is extended all present health insurance provided by Blue Cross-Blue Shield and Major Medical to general city employees who retire after January 1, 1974, and who meet all of the following qualifications:
>
> 1) Are between the ages 60–65;
>
> 2) Who have 15 or more years of city service; and
>
> 3) Who retire under the general city retirement system with an unreduced "retirement allowance:" and, be it
>
> . . . .
>
> *Further Resolved.* That all benefits for such coverage as provided for in this resolution shall be paid for by the City.

Loth may have worked for the City for fifteen years and he may have intended to retire under the general city retirement system with an unreduced "retirement allowance" in 2002; however, he had not yet reached the age of 60. The trial court's order should be affirmed.