Albert Loth, Plaintiff-Appellant,

v.

City of Milwaukee,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2007AP587. Oral argument November 4, 2008.
—Decided December 30, 2008.*

2008 WI 129

(Also reported in 758 N.W.2d 766.)

For the defendant-respondent-petitioner there were briefs by *Alan M. Levy* and *Lindner & Marsack, S.C.*, Milwaukee, and oral argument by *Alan M. Levy.*

For the plaintiff-appellant there was a brief by *James W. Greer, Jr., Barbara J. Janaszek,* and *Whyte Hirschboeck Dudek S.C.*, Milwaukee, and oral argument by *James W. Greer, Jr.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The City of Milwaukee seeks review of a published court of appeals decision reversing an order and judgment of the Circuit Court for Milwaukee County, Patricia D. McMahon, Judge.[1] The circuit court granted summary judgment to the City and dismissed Albert Loth's complaint.

¶ 2. The single issue posed on review is which City health insurance plan covers Loth, who had 15

[1] *Loth v. City of Milwaukee,* 2008 WI App 12, 307 Wis. 2d 412, 745 N.W.2d 693.

years of service with the City in 1999, reached the age of 60 in 2005, and retired in 2005:

(1) The pre-2004 City health insurance plan, which provided for no-premium-cost health insurance for City employees between ages 60 and 65 with 15 years of service who retired from City service; or

(2) The post-2004 City health insurance plan (enacted in 2002 to take effect in 2004), which provides for shared-premium-cost health insurance for City employees between ages 60 and 65 with 15 years of service who retire from City employment after January 1, 2004.

¶ 3. Loth contends that he is entitled to the pre-2004 no-premium-cost health insurance upon retirement because the pre-2004 no-premium-cost provision was in effect when he completed 15 years of service with the City in 1999. Loth's position is that when a management employee completes 15 years of service the employee is entitled to the no-premium-cost provision under the health insurance benefit in effect at that time, even if the management employee has not attained the specified retirement age and has not retired. In sum, Loth argues that although he could not receive a retiree's health insurance benefit until he retired at age 60, he earned the retiree benefit upon his completion of 15 years of service. According to Loth, attaining the retirement age of 60 and retiring are mere conditions precedent to receipt of the free health insurance benefit.

¶ 4. In contrast, the City contends that Loth is entitled to the post-2004 shared-premium-cost health insurance because Loth did not attain the age of 60 and did not retire until 2005 when the post-2004 resolution

was in effect for persons who retired after January 1, 2004.[2]

¶ 5. The only point of dispute between Loth and the City is whether Loth has to pay a premium for the health insurance benefit. Loth wants all the health insurance options and benefits available to retirees each year but wants them according to what he views as the City's promise that he would be entitled to the no-premium-cost health insurance benefits in effect when he was in City service for 15 years.

¶ 6. We agree with the City and the circuit court: The pre-2004 City health insurance plan does not govern Loth's health insurance on his retirement in 2005. The pre-2004 City health insurance plan clearly provided health insurance to management employees who met three qualifications: The management employee had to retire; had to be between the ages of 60 and 65; and had to have 15 or more years of city service.[3] Before 2004, Loth had met only one of the pre-2004 qualifications for no-premium-cost health insurance: he had 15 years of employment with the City. Loth had neither attained the age of 60 nor retired when the pre-2004 health insurance plan was in effect. Thus Loth had not satisfied all three requirements

---

[2] After the 2002 Resolution went into effect in 2004, a free HMO plan was still in existence. The free HMO plan provided Loth with no benefits because Loth was planning to move to Florida. To be eligible for the free HMO plan, the retiree had to reside in designated counties in southeastern Wisconsin.

[3] One resolution in the circuit court record also suggests that employees had to retire with an unreduced "retirement allowance." The parties, however, do not address the issue whether Loth had, or needed to have, an unreduced retirement allowance in order to qualify for the health insurance benefit.

under the pre-2004 health insurance plan before the health insurance plan was amended to take effect in 2004.

¶ 7. Accordingly, Loth's health insurance plan is governed by the post-2004 City resolution that was in effect when Loth became 60 years of age and retired with more than 15 years of service with the City.

¶ 8. We therefore reverse the decision of the court of appeals and affirm the order and judgment of the circuit court granting summary judgment to the City and dismissing Loth's complaint.

I

¶ 9. We review the circuit court's grant of summary judgment in the present case independently, applying the same methodology that is used by the circuit court.[4] Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5] There is no genuine issue of material fact in the instant case.

¶ 10. The present case raises only a question of law, namely the interpretation and application of a municipal resolution to undisputed facts. This court determines this legal question independently of the circuit court and court of appeals but benefitting from their analyses.[6]

---

[4] *Novell v. Migliaccio,* 2008 WI 44, ¶ 23, 309 Wis. 2d 132, 749 N.W.2d 544 (citation omitted).

[5] Wis. Stat. § 802.08(2).

[6] *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 6, 260 Wis. 2d 633, 660 N.W.2d 656.

## II

¶ 11. The relevant facts of Loth's employment are not disputed. The City hired Loth as an accountant on November 19, 1984. He was a management employee and was not covered by any collective bargaining agreement between the City and its employees. By November 1999 he had been in the City's service for 15 years. He did not attain the age of 60 or retire until April 2005.

¶ 12. Upon Loth's retirement on April 25, 2005, the City provided him with health insurance benefits according to the terms of a 2002 City of Milwaukee Resolution effective for employees who retire on or after January 1, 2004. The City deducted health insurance premiums from his retirement check. Loth objects to the City's deducting the premiums.

¶ 13. Loth contends that a binding contract was formed between him and the City in 1999 when he completed his 15th year of service to the City, that under that contract the City is obligated to provide no-premium-cost health insurance to him under the health insurance plan in effect in 1999, and that the City cannot alter this 1999 no-premium-cost agreement.

¶ 14. Loth brought an action against the City, alleging that the City had breached its contract with Loth by refusing to provide him with free health insurance benefits according to the terms of the plan that was in effect in 1999 when he had put in his 15

_See also Cross v. Soderbeck,_ 94 Wis. 2d 331, 343, 288 N.W.2d 779 (1980) ("The only substantial difference between a resolution and an ordinance apart from the subject to which it shall apply is that one is required to be published subsequent to its passage and the other is not.") (quotation marks and citation omitted).

years of service.[7] To prevail on a breach of contract theory, Loth must establish that a contract exists, the terms of the contract, and the breach of a duty under the contract. In the instant case, the City has made a unilateral offer of health insurance benefits that requires an employee to perform the requested acts to accept the offer and give rise to a binding contract.

¶ 15. Both parties moved for summary judgment. The circuit court granted summary judgment to the City. A divided court of appeals reversed the circuit court's order granting summary judgment to the City and remanded the cause to the circuit court for a determination of Loth's damages and a declaration of Loth's rights.

¶ 16. The precise wording of the applicable City resolution in effect in 1999 governing a retiree's health insurance benefits is not in the record. We shall rely on the resolutions and handbooks that the parties recite and upon which they rely. We therefore start by examining the applicable documents for the terms of the City's unilateral offer of health insurance benefits.

¶ 17. Loth and the City agree that City of Milwaukee Resolution 020479, enacted on July 16, 2002 (and effective in 2004), accurately describes the substance of the City's health insurance plan in effect in 1999 as providing no-premium-cost health insurance to certain retirees. The Resolution states in one of its "whereas" clauses that the City "currently provides that General City Management employees who select retirement, those 55 years of age with 30 years of service or those 60 years of age with 15 years of service, can select any

---

[7] Loth abandoned his claim of promissory estoppel on appeal. *Loth,* 307 Wis. 2d 412, ¶ 7 n.2.

41

health insurance plan the City offers at no cost until they reach age 65 . . . ."[8]

¶ 18. This language explicitly states that a management employee has to select retirement to get no-premium-cost City health insurance. In addition, the management employee also has to be 60 years of age, with 15 years of service. This reading of the City's plan is also supported by various documents in the record that both parties recite and rely upon relating to the City's health insurance plan over the years.

¶ 19. Loth, the City, the circuit court and the court of appeals refer to a 1973 resolution adopted by Milwaukee's common council, City of Milwaukee Resolution 73–216. This resolution was one of the City's early health insurance plans for management employees who retire.[9]

¶ 20. The 1973 resolution provides for no-premium-cost insurance to City management employees who retire after January 1, 1974, and meet three qualifications set forth in the resolution, namely that the employee is between the ages of 60 and 65, has been in City service for 15 or more years, and retires with an unreduced retirement allowance.

---

[8] City of Milwaukee Resolution 020479.

[9] It does not appear that City of Milwaukee Resolution 73–216 was in effect when the City hired Loth in 1984. Counsel for the City filed with the circuit court a copy of City of Milwaukee Resolution 73–646, which states in relevant part that "Common Council Resolution File Number 73–216 (entitled: 'Resolution relating to coverage for retirees with respect to health insurance') is hereby rescinded and repealed." The City's common council passed City of Milwaukee Resolution 73–646 late in 1973, less than one year after passing City of Milwaukee Resolution 73–216 and more than ten years before the City hired Loth.

¶ 21. City of Milwaukee Resolution 73–216 states in relevant part as follows:

Resolution relating to coverage for retirees with respect to health insurance.

*Whereas.* The City is desirous of extending without cost to retirees health insurance provided by Blue Cross-Blue Shield and Major Medical to certain retirees; now, therefore, be it

*Resolved.* By the Common Council of the City of Milwaukee that there shall be and is extended all present health insurance provided by Blue Cross-Blue Shield and Major Medical to general city employes who retire after January 1, 1974, and who meet all of the following qualifications:

1) Are between the ages 60–65;

2) Who have 15 or more years of city service; and

3) Who retire under the general city retirement system with an unreduced "retirement allowance;" and, be it

. . . .

*Further Resolved.* That all benefits for such coverage as provided for in this resolution shall be paid for by the City.[10]

---

[10] When this resolution was adopted the City offered only one health insurance plan and a retiree had broad discretion to choose any health care provider. Some years later the City began offering HMO plans in addition to the basic plan.

When Loth was hired, the City extended no health insurance benefits to retirees under the age of 60. By 2002, the City provided that a retired management employee aged 55–65 with 30 years of service could participate at no cost in any one of the multiple health insurance plans offered.

¶ 22. Two handbooks available when Loth was hired describe the City's health insurance plan available to retired management employees. These descriptions are similar to the description of the City's health insurance plan in the 1973 resolution quoted above.

¶ 23. One handbook, the City of Milwaukee Management Plan 1983–84, describes the City's health insurance plan for retirees as follows: "Employees in active service who retire on normal pension with at least 15 years of creditable service will be entitled to . . . medical benefits so long as they are at least age 60 and less than age 65." It further provides that "[g]eneral City retirees 60–65 with at least 15 years' service are entitled to City paid health insurance which includes their eligible dependents." Again the language refers to a management employee who retires and has attained the age of 60.

¶ 24. A second handbook, entitled "Policies and Procedures for Health and Dental Plans,"[11] similarly states that "[c]urrent City rules provide for City-paid (free) health coverage for general City retirees with a normal service retirement, age 60 to 65, provided they have at least 15 years of City service." Again the language refers to a retiree who has attained the age of 60, not to an active employee.

¶ 25. The 1973 Resolution and the two handbooks state that to be eligible for no-premium-cost health insurance, the management employee has to satisfy three qualifications: be at least 60 years old, have at least 15 years of service with the City, and retire.

¶ 26. The final relevant document is the City's amendment to its health insurance plan for manage-

---

[11] The date of publication for the Handbook does not appear in the circuit court record.

ment employees in July 2002 providing that the "rate structure for health insurance for all Management Employees who retire on or after January 1, 2004, [is] the same as it is for active Management Employees." After January 1, 2004, active management employees had to pay premiums for certain health insurance plans. Thus under the terms of the 2002 Resolution, City of Milwaukee Resolution 020479, a management employee who retires on or after January 1, 2004, would not be entitled to participate in all health insurance plans at no cost, even though he had been in the service of the City for 15 years in 1999.

¶ 27. Loth interprets the City's offer of free health insurance benefits as follows: He contends that he was not required to work until he reached age 60 and was not required to retire in order to earn the health insurance benefit offered by the City. He asserts that "attaining the retirement age of 60 and retiring were merely conditions precedent to receipt of the deferred health insurance benefit" that Loth earned by his 15 years of service.[12] In essence, Loth argues that although he had to wait until reaching age 60 and retiring to get the health insurance benefits, the 15 years of service to the City in November 1999 earned him the right in 1999 to no-premium-cost health insurance benefits when he retired in 2005 at age 60.

¶ 28. We disagree with Loth's interpretation of the City's unilateral offer of health insurance benefits.

---

[12] Brief and Supplemental Appendix of Respondent Albert Loth at 19.

*See also* Brief and Supplemental Appendix of Respondent Albert Loth at 21 ("[T]he provision for retirement at the age of 60 establishes *when* the manager first becomes eligible to receive the benefit (i.e., retirement between the ages of 60 and 65), not *what* he has to do to earn it.") (emphasis in original).

The documents demonstrate that the City's no-premium-cost health insurance plan for retirees came into effect only when a management employee like Loth retired after attaining the age of 60 and having been in City service for at least 15 years. The 1973 resolution explicitly applies to a management employee who retires after January 1, 1974 and meets all three qualifications, that is, age, length of service, and retirement, to qualify for retiree health insurance. The 1973 resolution offered retiree health insurance benefits only to those who "retire[d] under the general city retirement system with an unreduced 'retirement allowance[.]'" The other pre-2004 City health insurance plans similarly state in one way or another that retiree health insurance benefits are available only to "General City Management employees who select retirement."

¶ 29. Loth urges that in any event, "the undisputed evidence unequivocally reflects that the City fully understood—and repeatedly represented to employees and prospective employees—that any managerial employee who provided 15 years of service earned the premium-paid *retiree* health insurance benefit," regardless of the employee's age or retirement status.[13] Even viewed in the light most favorable to Loth, the record does not support Loth's position. The affidavits state that the City sought to hire and retain employees by emphasizing the City's employee benefit package, but nothing in the affidavits or record supports Loth's contention that the City represented that an employee was entitled to a retiree health insurance benefit when he was in service for 15 years even if he was not 60 years of age and he did not retire.

---

[13] Brief and Supplemental Appendix of Respondent Albert Loth at 23 (emphasis in original).

¶ 30. Loth also relies on a line of cases going back to 1912 to support his interpretation of the City's unilateral offer of health insurance benefits. These cases hold that an employer's promise of deferred benefits gives rise to a binding contract between the employer and its employee when the employee completes the service required to receive the benefits. In *Zwolanek v. Baker Manufacturing Co.*, 150 Wis. 517, 521–23, 137 N.W. 769 (1912), the court concluded that a corporate by-law setting forth the terms of a profit-sharing plan constituted "the offer of a reward to employees for constant and continuous service" which an employee could accept "by a performance of the services requested in the offer . . . ." After the employee's performance, the offer cannot be revoked, "so as to deprive a person who has acted on the faith thereof of compensation."[14]

¶ 31. These cases teach that the terms of an employer's unilateral offer are important in determining how an employee may accept the offer and give rise to a binding contract.[15] In the instant case, the City offered free health insurance when a management

---

[14] *See also Rosploch v. Alumatic Corp. of Am.*, 77 Wis. 2d 76, 83, 251 N.W.2d 838 (1977) (stating that Alumatic's profit-sharing plan "constituted an offer of deferred additional compensation, to be paid according to its terms, which Rosploch accepted by continuing to work for Alumatic."); *Voigt v. S. Side Laundry & Dry Cleaners, Inc.*, 24 Wis. 2d 114, 116, 128 N.W.2d 411 (1964) ("Non-contributory pension plans are held to give rise to a contractual obligation by the employer to pay pension benefits to the employees entitled thereto under the plan communicated to the employees where the employees thereafter remain in the employer's employment and render service for the requisite period. The same principle is applicable to profit sharing plans.") (citations omitted).

[15] *See Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 237, 271 N.W.2d 879 (1978) ("According to basic principles of

employee retires having attained the age of 60 and having been in City service for at least 15 years.

¶ 32. Loth also relies on three more recent cases in support of his position that a contract was formed when he completed his 15th year of City service and that the City is obligated to furnish health insurance benefits to him according to the plan in effect in 1999 when he completed his 15th year of service to the City: *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978); *Roth v. City of Glendale*, 2000 WI 100, 237 Wis. 2d 173, 614 N.W.2d 467; and *Champine v. Milwaukee County*, 2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245. Each case, however, is distinguishable from the case at hand.

¶ 33. In *Schlosser*, the plaintiff employees had worked for Allis-Chalmers and then had retired. At the time of each employee's retirement, Allis-Chalmers had a policy to provide free life insurance to retired employees over the age of 65. Some of the employees apparently had retired before turning 65.[16] All of the employees, however, had retired pursuant to company rules while the free life insurance policy was still in effect.

¶ 34. Allis-Chalmers argued it could unilaterally amend its contract to provide free life insurance to its retired employees pursuant to a reserved right (stated in various certificates and booklets that Allis-Chalmers issued to its employees) to modify the terms of its group life insurance plan.

¶ 35. The *Schlosser* court stated that the employer could not change a life insurance benefit after an

---

contract law, creation of a binding unilateral contract requires that the offeree perform the requested act . . . .").

[16] *See Schlosser*, 86 Wis. 2d at 238 (acknowledging that some of the retired employees "may have retired before reaching age sixty-five").

employee had retired and had "complied with all the conditions entitling him to retirement rights thereunder."[17]

¶ 36. But the *Schlosser* court also stated that under the terms of Allis-Chalmers' policy, the employees earned the insurance benefit by providing the services required by Allis-Chalmers and that "attaining age sixty-five was simply a condition precedent under the terms of the contract" to actual receipt of the earned benefit.[18] In other words, as the court interpreted the Allis-Chalmers plan, even those employees who retired before reaching the age of 65 had earned the benefit of receiving free life insurance upon turning 65. As the court interpreted the plan, the employees earned the benefit by working for Allis-Chalmers until retirement; the employees did not need to put their retirement off until age 65 in order to receive the benefit.[19]

¶ 37. The City's offer of health insurance benefits in the present case is different from Allis-Chalmers' offer of life insurance benefits in the *Schlosser* case. Although the employees in *Schlosser* did not need to work until age 65 to earn the life insurance benefits offered by Allis-Chalmers, Loth and other management

---

[17] *Schlosser,* 86 Wis. 2d at 247 (quoting *Cantor v. Berkshire Life Ins. Co.,* 171 N.E.2d 518 (Ohio 1960)).

[18] *Schlosser,* 86 Wis. 2d at 238.

[19] The supreme court in *Schlosser* apparently accepted the circuit court's ruling that the retired employees had "complied with the terms of [Allis-Chalmers'] offer by continuing to work through retirement" and that "[w]hen each employee completed his or her employment at Allis Chalmers and retired from the company, nothing further was required of that [employee] to perfect his or her right to participate in the company's free group life insurance program." Appendix of Allis-Chalmers' brief to the supreme court at viii, xvii.

employees with 15 years of service were, under the City's plan, required to work until age 60 to earn the health insurance benefits offered by the City.[20]

¶ 38. Furthermore, even if the City's offer did not differ from Allis-Chalmers' offer with regard to the age factor, Loth still cannot rely on *Schlosser.* In *Schlosser* all of the Allis-Chalmers retired employees had completed their employment with Allis-Chalmers and had retired while the offer of free life insurance was still in effect. Loth, in contrast, did not complete his employment with the City and retire while the City's offer of free health insurance was still in effect.

¶ 39. *Schlosser*'s analysis is inapposite in the present case. The City is not attempting to modify any contractual obligation to Loth. Loth did not accept the City's unilateral promise of no-premium-cost health insurance benefits; he had not fully performed the services entitling him to such benefits when the City amended in policy in 2002 effective in 2004. The City is obligated to provide retiree health insurance benefits to Loth according to the terms of the 2002 Resolution, which was already in effect when Loth completed his employment with the defendant at age 60 and retired. The City has not attempted to amend the terms of the 2002 Resolution with respect to Loth.

¶ 40. In *Roth v. City of Glendale,* 2000 WI 100, 237 Wis. 2d 173, 614 N.W.2d 467, the second case upon which Loth relies, the City of Glendale had contracted to provide a group of City employees with free health insurance upon the employees' retirement in a series of collective bargaining agreements, each of which had

---

[20] A management employee with 30 years of service, however, could earn the benefit by working until age 55 and then retiring.

subsequently expired after a specified term of one to three years. The issue in *Roth* was whether a retired employee's contractual right to free retiree health insurance benefits vested under the collective bargaining agreement upon the employee's retirement, so that the retiree's right to free health insurance survived the expiration of the collective bargaining agreement that had provided the free health insurance benefit.[21]

¶ 41. In *Roth* (as in *Schlosser* and in the instant case) the dispute centered on the proper interpretation of the terms of employment. The cause in *Roth* was remanded to the circuit court to determine whether the collective bargaining agreement vested health benefits for the retirees. The *Roth* court recognized a presumption that, in the absence of contractual language or extrinsic evidence indicating otherwise, retiree health benefits provided for by a collective bargaining agreement vest at the time of an employee's retirement.

¶ 42. The *Roth* court (relying on the *Schlosser* decision) recognized that equitable considerations exist when employees are denied retirement benefits they have relied upon during their service to the employer and concluded that it would defy these equitable considerations to allow employers to modify their past contractual obligations to retired employees when the employees were given no indication that the benefits were for a fixed term only.[22]

¶ 43. *Roth* is not on point in the present case because the City is not attempting to modify any past or

[21] *Roth v. City of Glendale*, 2000 WI 100, ¶ 9, 237 Wis. 2d 173, 614 N.W.2d 467 (stating that the plaintiffs "claimed a vested right to fully-paid health insurance benefits pursuant to the terms of the collective bargaining agreements in force at the time of their respective retirements.").

[22] *Roth*, 237 Wis. 2d 173, ¶ 32.

present contractual obligation to Loth. The City and Loth never formed a contract obligating the City to provide Loth with no-premium-cost retirement health insurance benefits before Loth retired. The contract between Loth and the City thus obligates the City to provide retiree health insurance benefits to Loth according to the terms of the 2002 City Resolution. The City does not assert that the contract under the 2002 resolution has expired or that the City is not bound by the contract's terms for any other reason. Furthermore, the *Roth* case involved employees whose rights were being modified after retirement; the potential inequities for retired employees motivating the *Roth* decision are not present in instant case.

¶ 44. Finally, in *Champine v. Milwaukee County*, 2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245, a Milwaukee County ordinance in effect prior to March 15, 2002, provided that retiring non-union employees could receive full payout for their accrued sick allowance. An amended ordinance took effect on March 15, 2002, providing that retiring non-union employees could receive only partial payout for their accrued sick allowance. A class of employees who retired on or after March 15, 2002, sought to receive full payout for the sick allowance they had accrued prior to the effective date of the amended ordinance.

¶ 45. The *Champine* court of appeals held that when an employee has the right to be paid for accrued sick allowance, the payout benefit "represents a form of deferred compensation that is earned as the work is performed" and that may be altered "only as it is related to work not yet performed."[23] The court of appeals

---

[23] *Champine v. Milwaukee County*, 2005 WI App 75, ¶ 16, 280 Wis. 2d 603, 696 N.W.2d 245.

concluded in *Champine* that the retired employees were entitled to receive full payout for the sick allowance that they had accrued before the amended ordinance took effect.[24] Furthermore, the *Champine* court acknowledged equitable considerations, stating that "[o]nce work is performed while a contract or unilateral promise is in effect, permitting retroactive revocation of that promise would be unjust and inequitable."[25]

¶ 46. *Champine* is distinguishable from the present case. In Champine the payout for accrued sick leave represents a benefit that is "earned as the work is performed." An employee accrues sick allowance (and may earn the right to receive payout for the accrued sick allowance) gradually as the employee performs his or her work. In contrast, the City's management employees in the instant case earn the right to retiree health insurance benefits at a single designated date. Thus the service required to earn the benefits and the equitable considerations in *Champine* are not present in the instant case.

\* \* \* \*

¶ 47. For the reasons set forth, we agree with the City and the circuit court: The pre-2004 City health insurance plan does not govern Loth's health insurance on his retirement in 2005. The pre-2004 City health

---

[24] The court of appeals did not hold that the retired employees were entitled to receive full payout for any sick allowance that they had accrued after the amended ordinance took effect on March 14, 2002. The court of appeals stated that "[t]he ability to obtain payout for sick allowance accrued after March 14, 2002, may be modified prospectively by the County." *Champine,* 280 Wis. 2d 603, ¶ 19.

[25] *Champine,* 280 Wis. 2d 603, ¶ 17.

insurance plan clearly provided health insurance to management employees who met three qualifications: The management employee had to retire; had to be between the ages of 60 and 65; and had to have 15 or more years of city service.[26] Before 2004, Loth met only one of the pre-2004 qualifications for no-premium-cost health insurance: he had 15 years of employment with the City. Loth had neither attained the age of 60 nor retired when the pre-2004 health insurance plan was in effect. Thus Loth had not satisfied all three requirements under the pre-2004 health insurance plan before the health insurance plan was amended to take effect in 2004.

¶ 48. Accordingly, Loth's health insurance plan is governed by the post-2004 City resolution, which was in effect when Loth became 60 years of age and retired with more than 15 years of service with the City.

¶ 49. We therefore reverse the decision of the court of appeals and affirm the order and judgment of the circuit court granting summary judgment to the City and dismissing Loth's complaint.

¶ 50. *By the Court.*—The decision of the Court of Appeals is reversed.

[26] One resolution in the circuit court record also suggests that employees had to retire with an unreduced "retirement allowance." The parties, however, do not address the issue whether Loth had, or needed to have, an unreduced retirement allowance in order to qualify for the health insurance benefit.