DAVID T. PROSSER, J.
¶ 53. (concurring). This case is more difficult than Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766, and Stoker v. Milwaukee County, 2014 WI 130, 359 Wis. 2d 347, 857 N.W.2d 102. Because the result here appears to be unfair, I have attempted to find some reasonable ground to distinguish this case from Loth and Stoker in order to preserve a right — at least for some county employees — to receive the promised benefit of Medicare Part B premium reimbursement sometime in the future.
¶ 54. This good faith effort has failed. Without resort to the surrounding statutes and ordinances, this case is governed by Loth. Turning to those statutes and ordinances, there is a disconnect between the language of the statutes and ordinances and the reality of the situation. It is not possible to *681 conclude that county employees like Schwegel and Jaskulski have vested rights to Medicare Part B premium reimbursement before they retire — indeed from the time they were hired — without gravely impairing a county government's ability to manage its fiscal affairs.
¶ 55. In 1945 the legislature approved Chapter 138, Laws of 1945. The statement of LEGISLATIVE POLICY in the act reads as follows:
Employes have been attracted to and have remained in the public service in counties of more than 500,000 population despite the prevailing higher wages in other employments because of the deferred compensation for their services promised to them in the form of retirement annuities and death benefits in the retirement system to which they have been admitted as contributing members. The purpose of this act is to strengthen the public service in the most populous counties of the state by establishing the security of such retirement and death benefits.
¶ 56. Some of the premises in this statement of policy are no longer accurate. Prevailing wages in other employments are not always higher than in county service. Public employee benefits are no longer limited to retirement and death benefits and may reach very substantial amounts. Some more modern benefits, like those in question here, might be obtained only after 15 or more years of service. Thus, the protections outlined in 1945 may not square with the reality of contemporary benefits, as those protections do not fully contemplate modern benefit innovations. As a result, the legislature's policy of providing security to public employee benefits — declared some *682 seven decades ago — appears to have been greatly complicated and undermined by modern developments.
¶ 57. What is so frustrating today is that there appears to be no middle ground for courts between jeopardizing the public fisc by expansive, unreasonable interpretations of outdated statutes and permitting counties to break faith with many public employees by relying strictly upon technical rules.
¶ 58. Years ago, Congress passed the Employee Retirement Income Security Act (ERISA) to protect private employees who participate in pension plans. Something similar may be necessary in Wisconsin so that we can step back from the immediacy of the fiscal crises faced by public employers and develop a strategy to protect public finances without betraying the trust owed to loyal public employees.
¶ 59. For the foregoing reasons, I respectfully concur.
¶ 60. (dissenting). When the plaintiffs in the present case began their employment with Milwaukee County, they became members of the Milwaukee County Employees' Retirement System (MCERS).[1] MCERS is governed by Chapter 201 of the Milwaukee County General Ordinances (MCGO).

 See § 2(c), ch. 138, Laws of 1945.