SHIRLEY S. ABRAHAMSON, C.J.
¶ 61. The language of the state session laws and the Milwaukee County ordinances governing MCERS assures that County employees' right to receive *683 MCERS benefits becomes vested when the employees are hired. "Vested" means the County cannot renege on its promises.
f 62. Since at least 1989, MCGO § 17.14(7)(c) has provided certain employees with no-premium-cost coverage under Medicare Part B when they retire.[2]
¶ 63. In 1996, MCGO § 17.14(7)(h) was amended to provide explicitly that "[t]he provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.25(5.91) [sic]."[3] Section 201.25 is part of MCGO ch. 201, which governs MCERS.
¶ 64. The "vested benefit contract" referred to in MCGO § 17.14(7)(h) is the MCERS benefit contract that Milwaukee County enters with its employees at the time of their initial hire.
¶ 65. In 2011, the County changed its position and amended MCGO § 17.14(7) to provide that certain categories of Milwaukee County employees (including the plaintiffs[4]) will be ineligible for reimbursement of *684 their post-retirement Medicare Part B premiums upon their retirement in or after 2011 or 2012.
¶ 66. The instant case revolves around the parties' dispute about the effect and validity of the 2011 amendment. The issue presented is whether County employees who began working for the County after it agreed to reimburse employees for their post-retirement Medicare Part B premiums and before it changed its position have the right to reimbursement of their post-retirement Medicare Part B premiums. The circuit court decided that they do. I agree.
¶ 67. The majority opinion rules that the County need not keep its promise to employees.
¶ 68. Justice David T. Prosser concurs in the majority opinion, stating that a determination that the plaintiffs have a vested right to reimbursement of their post-retirement Medicare Part B premiums would "gravely impair[] a county government's ability to manage its fiscal affairs."[5]
¶ 69. For the County (or anyone) to pay expenses, including employee benefits, is burdensome. But despite Justice Prosser's opining without any financial data that upholding the plaintiffs' vested right to the benefits at issue in the instant case would gravely impair Milwaukee County's ability to manage its finances, the fact is that Milwaukee County does not defend the disputed 2011 amendment to MCGO § 17.14(7) on the grounds of "public economic emergency,"[6] "great public calamity,"[7] "extraordinary condi *685 tions,"[8] or "urgent public need."[9] The instant case therefore differs from Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 420 (1934), in which the United States Supreme Court upheld a Minnesota statute that allowed for the retroactive impairment of mortgage contracts due to "public economic emergency."[10]
¶ 70. Milwaukee County does not rely on a Blaisdell defense. Rather, Milwaukee County defends the 2011 amendment on the grounds that the benefits it affects were not vested. The majority opinion errs in accepting this argument. It undermines the state legislature's recognition of the hardship imposed on County employees unless the employees can make retirement plans with certainty about the retirement benefits they will receive from the County. To give employees certainty and to avoid imposing unnecessary hardship on them are the reasons the state *686 legislature vested County employees' retirement benefits in the first place. See § 1, ch. 138, Laws of 1945 ("The purpose of this act is to strengthen the public service by establishing the security of suchTretirement and death benefits" (emphasis added)).
¶ 71. The majority opinion is wrong on the law in three primary respects.
¶ 72. First, instead of focusing on the state session laws and the Milwaukee County ordinances that govern the benefits provided by the County's retirement system (including reimbursement for retirees' Medicare Part B premiums), the majority opinion digresses and emphasizes an unsupported distinction between health benefits and other forms of retirement benefits.
¶ 73. The majority opines that the County's retirement system and its system of providing health benefits are on two completely separate tracks.[11] The majority comes to this sweeping but unconvincing conclusion without any support in the governing state session laws, Milwaukee County ordinances, or cases (and ignoring contrary language within them) and without the benefit of adversarial briefs or argument. Milwaukee County's argument in the instant case centers on a trilogy of cases described in Part III of this opinion.
¶ 74. Try as it might, the majority opinion is not credible in its attempt at separating reimbursement of Medicare Part B premiums from the other benefits provided by MCERS or in its attempt at circumventing the text of the governing state session laws and Milwaukee County ordinances.
*687 ¶ 75. Second, the majority opinion disregards the clear language of the governing state session laws and Milwaukee County ordinances. The text of these laws and ordinances is dispositive of the instant case.
¶ 76. The language of the state session laws makes it abundantly clear that upon becoming County employees, the plaintiffs gained a vested right to the annuities and "all other benefits" provided by MCERS.[12] This broad language does not exclude reimbursement of post-retirement Medicare Part B premiums. The Milwaukee County ordinances incorporated reimbursement of post-retirement Medicare Part B premiums into MCERS.
¶ 77. The state session laws and the Milwaukee County ordinances say what they mean and mean what they say. They explicitly grant the plaintiffs a vested right at the commencement of their employment to reimbursement at retirement of their Medicare Part B premiums.
¶ 78. Third, the majority opinion fails to reconcile three decisions regarding the vesting of employee benefits that the circuit court and the court of appeals found confusing and inconsistent: Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997); Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644; and Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766.[13]
*688 ¶ 79. A careful reading of the three cases demonstrates that each turns on the language of the provisions governing the particular employee benefits at issue and that the provisions in Loth are significantly different from the provisions in Welter, Rehrauer, and the instant case.
¶ 80. The language of the laws and ordinances protecting reimbursement of the plaintiffs' post-retirement Medicare Part B premiums from diminishment by the County in the instant case is substantially the same as the language of the state session law protecting the employees' disability benefits from diminishment by the City in Welter and Rehrauer. The disability benefits in Welter and Rehrauer were part of the City of Milwaukee's retirement system and were governed by a state session law and City enactments, just as reimbursement of Medicare Part B premiums in the instant case is part of the County's retirement system and is governed by state session laws and County enactments.
¶ 81. In contrast, the language of the City of Milwaukee enactment governing the employee health benefits at issue in Loth is entirely different. In Loth, the health benefits at issue were not governed by state session laws and were not part of the City's retirement system; the City enactment at issue in Loth made no reference to the City's retirement system or to the vesting of benefits.
¶ 82. Thus, the Loth opinion and the Loth briefs do not cite Welter or Rehrauer because the provisions governing the benefits at issue in Loth were significantly different from the provisions governing the benefits at issue in Welter and Rehrauer.
¶ 83. The state session law at issue in Welter and Rehrauer (governing the City's retirement system) is *689 substantially the same as the state session laws governing Milwaukee County's retirement system in the instant case. Both Welter and Rehrauer, relying on the language of the governing state session law, held that the City police officers and firefighters had a vested right to the disability benefits at issue that could not be diminished by city enactment. Welter and Rehrauer govern the instant case; Loth does not.
¶ 84. By declaring that it will not reimburse the post-retirement Medicare Part B premiums of future retirees, the County has, in my opinion, breached the plaintiffs' vested benefit contracts in violation of state session laws, Milwaukee County ordinances, and case law precedent.
¶ 85. Accordingly, I dissent.
I
¶ 86. To reach its desired result, the majority opinion has concocted an unsupported distinction between health benefits and other forms of retirement benefits provided by MCERS. It raises this alleged distinction sua sponte and addresses it without the benefit of briefs or argument by the parties. It cites no authority in the governing state session laws, Milwaukee County ordinances, or case law to support its position, and it overlooks language in the governing state session laws, the Milwaukee County ordinances, and the cases that contradicts its position. Finally, it speaks in overly broad terms that are likely to have unanticipated consequences.
¶ 87. The majority opinion raises, analyzes, and adopts this "discreteness" theory sua sponte, without giving the parties an opportunity to participate in the discussion. When a court raises an issue sua sponte, *690 "fairness requires that the parties have the opportunity to develop the relevant facts and to present legal arguments on the issue."[14] The majority apparently sees no reason to provide such an opportunity in the instant case.
¶ 88. Thus, once again, I write to decry the court's failure to give counsel the opportunity to represent their clients before this court. The majority's position shows disrespect for the litigants and counsel.
¶ 89. I recognize that some justices prefer to reach decisions without the benefit of arguments or briefs by the parties and apparently perceive that the rule of law is advanced by the court's sua sponte approach. I do not. I prefer greater restraint by the court and greater respect for litigants and their counsel. As I have stated in the past:
[T]he rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral argument.
Indeed, a court's sua sponte determination of an issue may raise due process considerations: A court may be depriving parties of their right to a meaningful appeal, to due process notice, and to adversary counsel.[15]
*691 ¶ 90. I agree with Justice Ann Walsh Bradley that this court's role is to weigh the arguments of counsel, not to make arguments as counsel:
By raising sna sponte a brand new outcome-determinative issue, an appellate court tends to blur the lines between the role of the lawyer as advocate and the role of the judge as impartial decision maker. In contrast to the other branches of government, the judicial branch's role seems better fitted to respond to issues presented rather than creating issues to present.[16]
¶ 91. The majority opinion's sua sponte approach is especially galling considering the lack of support for the distinction the majority opinion draws within MCERS between health insurance and pension and death benefits.
*692 ¶ 92. The infirmity of the majority opinion's distinction is readily apparent in the many gratuitous, hollow-sounding comments it offers without any citation or explanation of their relevance to the parties' dispute. See, e.g., majority op., ¶ 44 ("County payment for health insurance premiums is not defined in a fixed way such that a County payment is tied to a specified benefit that always will follow. . . . [B]y their nature, health insurance benefits have always been fluid opportunities available for a limited period of time . . . ."); majority op., ¶ 45 ("[H]ealth insurance payments are not earned in increments . . . ."); majority op., ¶ 50 ("[P]ension cases [differ from cases involving] health insurance, the nature of which ... is a fluid opportunity for a limited period of time.").
¶ 93. The majority opinion's detour from the parties' arguments distorts the text of the 1996 amendment to MCGO § 17.14(7)(h) and the language of § 2, ch. 138, Laws of 1945, one of the state session laws governing the County's retirement system.
¶ 94. The 1996 amendment contradicts the majority opinion's assertion that health insurance for Milwaukee County employees has been "on a separate and independent track from pension and death benefits . . . ."[17]
¶ 95. Both before and after the 1996 amendment, MCGO § 17.14(7)(h) provided that the "County shall pay the full monthly cost of providing such coverage to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employee . . . ."
¶ 96. The text added to MCGO § 17.14(7)(h) by the 1996 amendment, which remains in the current *693 version of the ordinance, reads as follows: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.91) [sic]."[18]
¶ 97. The "vested benefit contract" to which the 1996 amendment refers is the vested benefit contract the County must enter with each employee when the employee is hired. See § 2, ch. 138, Laws of 1945. These contracts assure County employees a vested right to all benefits provided by MCERS at the employees' time of hire, rather than at the time of the employees' retirement.[19]
¶ 98. Thus, the 1996 amendment expressly puts health insurance and pension and death benefits on the same track by explicitly stating that the health insurance provided by MCGO § 17.14(7) is part of the "vested benefit contract" MCERS members enter at the commencement of their employment with the County.[20] MCGO § 17.14(7)(h) affirms that the particular health benefit at issue in the instant case comes within the restrictions of MCERS. The majority opinion's conclusion at ¶ 37 that the 1996 amendment means that health insurance is part of MCERS but not subject to the restrictions imposed on MCERS is specious.
¶ 99. The director of human resources'summary of the 1996 amendment (cited in ¶ 38 of the majority opinion to support its position) states:
The revisions related to the provisions of health insurance after retirement to retirees with 15 or more years *694 of pension service credit is being proposed only to clarify the fact that the benefit is a vested benefit.
¶ 100. The majority opinion emphasizes the word "retirees" and misinterprets the sentence to give employees vested rights to the health benefits at issue only at retirement. Read rationally in the context of MCGO § 17.14(7)(h) and in the broader context of MCERS, the 1996 amendment and the director's comment can mean only one thing for the plaintiffs: They gained a vested right to reimbursement of their post-retirement Medicare Part B premiums when they began their employment; to take advantage of this benefit, they must meet the enumerated prerequisites at retirement.
¶ 101. The majority opinion also garbles the language of § 2(c), ch. 138, Laws of 1945. This state session law, which governs MCERS, explicitly states that future MCERS members "shall have a . . . vested right in the annuities and all other benefits ... as provided in the law under which [MCERS] was established as such law shall have been amended and be in effect at the date of commencement of his [or her] membership. "[21]
¶ 102. The broad and inclusive reference in Chapter 138, Laws of 1945, to "all other benefits" and the broad language in Chapter 138 acknowledging that the benefits provided by MCERS will change over time demonstrate clearly that the benefits provided by MCERS can include newly adopted health benefits. The majority opinion's contrary conclusion at ¶ 26 is unsupported by the governing state session laws.[22]
*695 ¶ 103. In 2011, MCGO § 17.14(7) was again amended. The instant case revolves around the parties' dispute about the effect and validity of this 2011 amendment. The 2011 amendment states, among other things, that certain categories of County employees (including the plaintiffs) will be ineligible for reimbursement of their post-retirement Medicare Part B premiums upon their retirement in or after 2011 or 2012.
¶ 104. The majority opinion upholds the 2011 amendment without a convincing analysis of the applicable state session laws and the Milwaukee County ordinances protecting the plaintiffs.
¶ 105. Finally, reimbursement of qualified retirees' Medicare Part B premiums is not the only health benefit granted by Milwaukee County to retirees. The majority opinion is broadly written. Such a broad opinion is apt to have unanticipated ramifications.
| 106. In sum, the majority opinion's attempt at distinguishing health benefits at retirement from other kinds of benefits at retirement falls flat. The majority opinion's failure to give the parties an opportunity to address this alleged distinction, the lack of support for its position in the governing state session laws and Milwaukee County ordinances, its failure to acknowledge contradictory language in those laws and ordinances, and its sweeping characterization of health insurance as separate and distinct from MCERS render the majority opinion wholly unconvincing.
*696 II
¶ 107. The majority opinion's disregard for the clear language of the governing state session laws and Milwaukee County ordinances extends beyond its discussion of the supposedly inherent difference between health insurance and pension and death benefits. The laws and ordinances governing reimbursement for retired County employees' Medicare Part B premiums are in fact dispositive of the instant case.
¶ 108. The governing state session laws and the Milwaukee County ordinances make it abundantly clear that upon joining the County's retirement system, the plaintiffs gained a vested right to reimbursement of their post-retirement Medicare Part B premiums. Further, under the clear language of the laws and ordinances, Milwaukee County may change MCERS so long as no change diminishes or impairs the vested rights of MCERS members.
¶ 109. The 2011 Milwaukee County ordinance amendment at issue in the instant case states, among other things, that certain categories of County employees (including the plaintiffs) will be ineligible for reimbursement of their post-retirement Medicare Part B premiums upon their retirement in or after 2011 or 2012. The 2011 amendment diminishes or impairs the vested rights of then active MCERS members (including the plaintiffs) and is therefore invalid as applied to them.
¶ 110. The texts of the governing state session laws and Milwaukee County ordinances are dispositive. I first summarize the state session laws and Milwaukee County ordinances in chronological order and then discuss them more fully. The Milwaukee *697 County ordinances govern MCERS and have made reimbursement of Medicare Part B premiums part of MCERS (see E, below), but the ordinances must comport with the state session laws dating back to 1937 that protect Milwaukee County employees' vested contract rights (see A-D, below).
A. Chapter 201, Laws of 1937, required Milwaukee County to develop a retirement system for its employees. Pursuant to this law, Milwaukee County created MCERS.[23]
B. Chapter 138, Laws of 1945, declared that the legislative policy underlying MCERS is to recruit and retain County employees by establishing the security of their retirement and death benefits.[24] "[T]he legislature required employee benefits under MCERS to 'be assured by benefit contracts.' "[25] Chapter 138 also provided that at the commencement of their employment with the County, County employees become members of MCERS and have a "vested right in the annuities and all other benefits . . . [provided by] the law under which [MCERS] was established as such law shall have been amended and be in effect at the date of commencement of [their] membership [in MCERS]."[26]
C. Chapter 326, Laws of 1957, provided that "a member of MCERS has a 'vested right... to *698 all increases in benefits covered by amendments subsequent to the date his [or her] membership [in MCERS] is effective.' "[27]
D. Chapter 405, Laws of 1965, granted "home rule" authority to Milwaukee County over MCERS and provided that "the future operation of each [county] benefit fund is a matter of local affair and government. ..." It also "empowered Milwaukee County 'to make any changes in [its employee] benefit fund which hereafter may be deemed necessary or desirable for the continued operation of [MCERS]," but limited the County's authority by providing that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change."[28]
E. MCERS is also governed by Milwaukee County ordinances. As I discussed previously, the 1996 amendment to MCGO § 17.14(7)(h) incorporated reimbursement of the premium costs of Medicare Part B into MCERS by clarifying that such health benefits are "part of an employee's vested benefit contract." As part of MCERS, the benefits provided by MCGO § 17.14(7)(c) and (h) are subject to the vesting provision in Chapter 138, Laws of 1945; Chapter 326, Laws of 1957; and the home rule limiting provision in Chapter 405, Laws of 1965
*699 A
¶ 111. Chapter 201, Laws of 1937, required Milwaukee County to develop a retirement system for its employees for payment of benefits. Pursuant to this law, Milwaukee County created the Milwaukee County Employees' Retirement System (MCERS).[29]
B
| 112. I turn to the vesting provisions in Chapter 138, Laws of 1945. This state session law provides that Milwaukee County employees become members of MCERS at the commencement of their employment with the County and gain a vested right at that time in "the annuities and all other benefits ... as provided in the law under which [MCERS] was established as such law shall have been amended and be in effect at the date of commencement of [their] membership [in MCERS]."[30]
¶ 113. The most important aspects of Chapter 138, Laws of 1945, for the instant case are its use of the phrase "vested rights" and its recognition that MCERS will change over time with future benefits inuring to employees.
*700 ¶ 114. The phrase "vested rights" has a common usage in the law; it is a technical legal phrase. Under the general rules of statutory interpretation adopted by the legislature, the phrase is interpreted in conformance with its common usage (here, in the law) and is given its technical legal meaning.[31] The majority opinion offers a legal meaning, stating that "[a] vested contractual right is one that cannot be abrogated without breaching the contract from which it arises."[32] The majority opinion fails, however, to apply the definition it provides.
¶ 115. Despite the clear language in Chapter 138 providing the plaintiffs with a vested right to the benefits provided by MCERS at the commencement of their employment, the majority opinion concludes that the plaintiffs' right to reimbursement of their post-retirement Medicare Part B premiums never vested.
¶ 116. The relevant text of Chapter 138, Laws of 1945, is as follows (emphasis added):
*701 (2) CONTRACTS TO ASSURE BENEFITS. The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by ch. 201, Laws of 1937, as amended, shall be assured by benefit contracts as herein provided:
(a). . . The annuities and all other benefits . . . shall be obligations of such benefit contract on the part of the county. .. and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his [or her] consent.
(c) Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits ... as provided in the law under which the retirement system was established as such law shall have been amended and be in effect at the date of commencement of his [or her] membership.
c
¶ 117. In 1957, the legislature again affirmed Milwaukee County employees' vested right to MCERS benefits. Chapter 326, Laws of 1957, provides that a member of MCERS has a "vested right... to all increases in benefits covered by amendments subsequent to the date his [or her] membership [in MCERS] is effective."[33]
*702 D
f 118. Chapter 405, Laws of 1965, grants "home rule" authority to Milwaukee County over MCERS and empowers Milwaukee County "to make any changes [by county ordinances] in [its employee] benefit fund which hereafter may be deemed necessary or desirable for the continued operation of [MCERS]." Chapter 405 of the 1965 Laws limits this grant of home rule authority by providing that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change."[34]
¶ 119. In other words, Milwaukee County has authority to reduce the benefits provided to future employees but not to reduce the vested benefits of persons in the County's employ prior to the effective date of the reduction. This court held in Stoker v. Milwaukee County, 2014 WI 130, 359 Wis. 2d 347, 857 N.W.2d 102, that the limit on Milwaukee County's home rule authority allows it to reduce a benefit that has not vested but does not allow the County to reduce a benefit that has vested.[35]
¶ 120. The relevant text of Chapter 405, Laws of 1965, is as follows:
Each county which is required to establish and maintain a benefit fund pursuant to this act is hereby empowered by county ordinance, to make any changes in such benefit fund which hereafter may be deemed necessary or desirable for the continued operation of such benefit fund, but no such change shall operate to *703 diminish or impair the annuities, benefits or other rights of any person who is a member of such benefit fund prior to the effective date of any such change.[36]
E
¶ 121. In addition to the aforementioned state session laws, Milwaukee County ordinances govern MCERS.[37]
¶ 122. The significant ordinance is MCGO § 17.14(7). As I explained previously, in 1996, MCGO § 17.14(7)(h) was amended to clarify that the health benefits provided by subsection (7) (including MCGO § 17.14(7)(c) governing reimbursement of post-retirement Medicare Part B premiums) are part of the "vested benefit contract" MCERS members enter upon commencing their employment with the County, "as more fully set forth in 201.25(5.91) [sic]."
¶ 123. In sum, the laws and ordinances at issue in the present case could not be clearer: The plaintiffs' right to reimbursement of their post-retirement Medicare Part B premiums vested at the commencement of their employment with the County. Chapter 138, Laws of 1945, and Chapter 405, Laws of 1965, prohibit Milwaukee County from diminishing or impairing vested rights. Yet the 2011 amendment to MCGO § 17.14(7) does just that. Consequently, the 2011 amendment breached the plaintiffs' vested benefit contracts, violated the governing laws and ordinances, and is invalid.
¶ 124. As in Stoker, the majority opinion in the instant case is able to reach its conclusion that no *704 breach of contract or violation of law exists only "by repeatedly ignoring the language of the governing session laws."[38]
Ill
¶ 125. The third significant legal error in the majority opinion is its failure to reconcile three precedential opinions regarding the vesting of employee benefits. The circuit court and the court of appeals characterized the following three opinions as confusing and inconsistent: Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766; Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997); and Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644.
¶ 126. The County's position and argument in this court revolve around these three cases.
¶ 127. A careful examination of this trilogy demonstrates that the three opinions are consistent with each other, support the position I espouse, and govern the instant case.
¶ 128. The majority opinion claims it is following Loth, but it is in fact inconsistent with Loth. The majority opinion is also inconsistent with Welter and Rehrauer. The majority opinion in the instant case errs when it concludes that the plaintiffs' rights under MCGO § 17.14(7) do not vest until the plaintiffs reach retirement age, provide 15 years or more of credited County service, and retire.[39]
¶ 129. I begin by examining Loth, the only case the majority views as controlling. Loth is instructive and supports my position.
*705 | 130. Loth turns on the language of a City of Milwaukee resolution that governs the particular employee health benefits at issue in that case. Loth correctly insists that "the terms of an employer's . . . offer are important in determining how an employee may accept the offer and give rise to a binding contract."[40]
¶ 131. In Loth, a city resolution extended paid retiree health insurance coverage to employees who fulfilled enumerated prerequisites. The City never incorporated its retiree health insurance program into vested benefit contracts or otherwise indicated at any time or in any other way during Loth's employment that he had a contractual (let alone vested) right to paid retiree health insurance before he fulfilled the prerequisites set forth in the resolution.
¶ 132. The Loth court interpreted the City resolution as dictating that the City's offer of paid retiree health insurance could be accepted only by an employee's retiring at the appropriate age with the requisite years of service. The court stated: "The City and Loth never formed a contract obligating the City to provide Loth with no-premium-cost retirement health insurance benefits before Loth retired."[41]
¶ 133. The majority opinion proclaims its consistency with Loth and concludes that because the plaintiffs in the instant case had not retired at the time of the 2011 amendment to MCGO § 17.14(7), the County's offer to reimburse the plaintiffs' post-retirement *706 Medicare Part B premiums could still be revoked (as the offer of paid retiree health insurance was in Loth).[42]
¶ 134. The majority opinion overlooks the differences between Loth and the instant case and misreads Loth. Loth turns on the specific language used by the City employer to offer the particular health benefits at issue in that case. Loth correctly insists that "the terms of an employer's . . . offer are important in determining how an employee may accept the offer and give rise to a binding contract."[43]
¶ 135. Loth is relevant to the instant case, but not because it involves health benefits and not because the employee in Loth was required to fulfill enumerated prerequisites before receiving those health benefits at retirement. Rather, Loth is relevant because of the contrast between the language used by the City to offer the benefits at issue in that case and the language used by the County to offer the benefits at issue in the instant case.
¶ 136. In the instant case, Milwaukee County offered employment to the plaintiffs according to the terms set forth in the state session laws and the Milwaukee County ordinances governing MCERS. As I explained previously, these laws and ordinances provide that by accepting County employment, the plaintiffs enter into a vested benefit contract with the County. In the instant case, unlike in Loth, a binding bilateral agreement was created when the plaintiffs were hired by the County.
¶ 137. I turn to the other two cases in the trilogy: Welter and Rehrauer. These opinions of the court of *707 appeals have statewide precedential effect under Wis. Stat. § 752.41(2), which provides that "[officially published opinions of the court of appeals shall have statewide precedential effect." These two opinions played no role in the Loth case. They were not cited or argued and are not referenced in the Loth decision.
¶ 138. In Welter,[44] the court of appeals considered a state session law and provisions of Chapter 36 of the Milwaukee City Charter relating to the City of Milwaukee Employees' Retirement System. The issue presented was whether City police officers were entitled to the disability benefits provided by the City's retirement system when they were hired, that is, whether their right to post-retirement disability benefits vested at hire or could be reduced by the City prior to the police officers' retiring.[45]
¶ 139. The language of the governing state session law, Chapter 441, Laws of 1947, is substantially similar to the language of the state session laws at issue in the instant case. Chapter 441, Laws of 1947 provides:
Every such member .. . shall thereby have a benefit contract in said retirement system of which he [or she] is such member or beneficiary as of the effective date of this act.... Each member and beneficiary having *708 such a [retirement system] benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by other means without [the officer's] consent. . .. Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits . .. ,[46]
¶ 140. After considering the text of Chapter 441, Laws of 1947, the court of appeals in Welter determined that the disability benefits at issue vested when the plaintiff police officers became employees. Thus, the City could not amend Chapter 36 of the Milwaukee City Charter to deprive the police officers of those vested benefits.
¶ 141. The Welter court reasoned that the language of the governing state session law "[is] not ambiguous; [its] meaning is plain."[47] The same can be said of the state session laws governing the instant case. The Welter court went on to say: "Under [Chapter 441], retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer unless the officer agrees to a change."[48]
¶ 142. The court of appeals rejected the City's argument that the employees' right to the disability benefits at issue vested at some later date, stating that "[t]his argument. . . ignores the legislative command that the critical date is not that of the duty-related disability but the date the officer becomes a member of *709 the retirement system — the date he or she was first employed by the City as a police officer."[49]
¶ 143. Rehrauer, involving disability benefits for City of Milwaukee firefighters,[50] presented substantially similar issues as Welter. As in Welter, the benefits at issue were post-retirement disability benefits. As in Welter, the beneficiaries were City of Milwaukee employees. The same state session law (Chapter 441, Laws of 1947) and the same chapter of the Milwaukee City Charter (Chapter 36) governed the benefits at issue in Rehrauer as in Welter. The Rehrauer court concluded, as did the Welter court, that the City employees' benefits vested at the date of hire.
¶ 144. The terms of employment in the instant case are set forth in the state session laws and Milwaukee County ordinances discussed above, just as the terms of employment in Welter and Rehrauer were set forth in the state session law and City Charter provisions at issue in those cases. The language of the state session law at issue in Welter and Rehrauer is in all material respects the same as the language of the state session laws governing the instant case.
¶ 145. Welter and Rehrauer are directly on point and should guide this court's decision in the instant case. The majority opinion is dismissive of Welter and Rehrauer, characterizing them as disability pension cases and the instant case and Loth as health benefit cases. Without further explanation or citation to any authority, the majority opinion simply asserts that *710 pension benefits are a different type of benefit than health insurance, which is "a fluid opportunity for a limited period of time."[51]
¶ 146. Contrary to the majority opinion's assertion, health insurance, like a pension, can be a retirement benefit. The instant case is not a Loth case; it is a Welter/Rehrauer case. Unlike in Loth, Milwaukee County's offer to reimburse its employees' post-retirement Medicare Part B premiums in the instant case was not a unilateral offer. Unlike in Loth, the benefits at issue in the instant case are part of the County's retirement system.
¶ 147. Of course, the plaintiffs could not receive post-retirement benefits upon commencing their employment with the County. They first had to retire, complying with any enumerated prerequisites. But not immediately receiving post-retirement benefits simply does not mean the plaintiffs' right to reimbursement of their post-retirement Medicare Part B premiums did not vest when they commenced their employment with the County.
¶ 148. In sum, the majority opinion is unpersuasive in its attempt at circumventing the language of the governing state session laws and the Milwaukee County ordinances. That language is clear: The plaintiffs have a vested right to reimbursement of their post-retirement Medicare Part B premiums. The 2011 amendment to MCGO § 17.14(7) constituted a breach of the plaintiffs' vested benefit contracts and a violation of the governing state session laws and Milwaukee County ordinances. The circuit court properly granted *711 the plaintiffs' motion for summary judgment, and the court of appeals decision reversing the circuit court's order should be reversed.
¶ 149. For the reasons set forth, I dissent.
¶ 150. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 The majority opinion explains that provisions in MCGO § 17.14(7) have been renumbered since 1989. For ease of reading, I refer to the numbering used at the time the relevant provisions were adopted.

 As the majority opinion notes, the reference in MCGO § 17.14(7) to MCGO § 201.24(5.91) appears to be a drafting error. See majority op., f 10 n.9. There is no MCGO § 201.24(5.91). The reference in MCGO § 17.14(7) should be to MCGO § 201.24(5.10).
MCGO § 201.24(5.10) provides: "Members who retire with sufficient pension service as noted in chapter 17 of the Code, or the appropriate labor agreement, shall be provided with paid health insurance as noted in chapter 17 of the Code, however such benefit shall not be funded via the pension fund."

 The plaintiffs were hired by Milwaukee County in 1989 and 1990.

 Concurrence, ¶ 54.

 See Home Bldg. & Loan Ass’n v. Blaisdell, 290 U.S. 398, 420 (1934).

 See id. at 439.

 See id.

 See id. at 440.

 The Blaisdell Court determined that while the Contract Clause of the federal constitution generally prohibits states from enacting laws that retroactively impair contracts, "the prohibition is not an absolute one." Blaisdell, 290 U.S. at 428. The Court declared that the police power indisputably enables states to interfere with contracts when such interference is "made necessary by a great public calamity such as fire, flood, or earthquake." Blaisdell, 290 U.S. at 439 (emphasis added). The Court further declared that "[t]he reservation of state power appropriate to such extraordinary conditions" is necessarily "a part of all contracts." Blaisdell, 290 U.S. at 439 (emphasis added). Finally, the Court concluded that "if state power exists to give temporary relief from the enforcement of contracts in the presence of [natural] disasters ... [then] that power cannot be said to be nonexistent when the urgent public need demanding such relief is produced by [] economic causes." Blaisdell, 290 U.S. at 439-40 (emphasis added).

 See majority op., ¶¶ 23-37, 44, 45.

 § 2(c), ch. 138, Laws of 1945.

 While the majority opinion focuses on distinguishing health insurance from pension and death benefits (tackling Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766, as a mere afterthought), the County's brief focuses primarily on these three employee benefit cases.

 Hydrite Chem. Co. v. Aetna Cas. & Sur. Co., 220 Wis. 2d 26, 49, 582 N.W.2d 423 (Ct. App. 1998) (Roggensack, J., dissenting).

 Maurin v. Hall, 2004 WI 100, ¶¶ 119-121, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J. & Crooks, J., concurring), overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216. In Maurin, Justice Crooks and I criticized the majority opinion for deciding the case on the basis of a "novel interpretation of the statutes" without first requesting supplemental briefs or reargument. Maurin, 274 Wis. 2d 28, ¶ 120 (Abraha *691 mson, C.J., & Crooks, J., concurring). Our concurrence stated: "We are at a loss to understand why the majority refuses to call for additional briefs." Maurin, 274 Wis. 2d 28, ¶ 121 (Abrahamson, C.J., & Crooks, J., concurring).

 Attorney's Title Guar. Fund, Inc. v. Town Bank, 2014 WI 63, ¶ 56, 355 Wis. 2d 229, 850 N.W.2d 28 (Bradley, J., dissenting).
See also Bartus v. DHSS, 176 Wis. 2d 1063, 1073, 501 N.W.2d 419 (1993) ("We therefore urge the courts to exercise caution when determining an issue sua sponte without the assistance of supplemental briefs and to ask for briefs unless the matter is quite clear."); Cemetery Servs., Inc. v. Wis. Dep't of Regulation & Licensing, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998) ("We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs."). Accord Day v. McDonough, 547 U.S. 198, 210 (2006) ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

 Majority op., ¶ 33.

 MCGO § 17.14(7)(h) (1996) (emphasis added).

 § 2(c), ch. 138, Laws of 1945.

 MCGO § 17.14(7)(h) (1996).

 § 2(c), ch. 138, Laws of 1945 (emphasis added).

 See also ch. 405, Laws of 1965, granting Milwaukee County home rule and empowering it to make changes to the *695 retirement system "by county ordinance" so long as no change "diminish[es] or impair[s] the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of such change."

 Stoker v. Milwaukee Cnty., 2014 WI 130, ¶ 5, 359 Wis. 2d 347, 857 N.W.2d 102.

 See id., ¶ 5 n.7.

 Id., ¶ 5 (quoting and citing ch. 138, Laws of 1945).

 Id. (quoting and citing ch. 138, Laws of 1945).

 Id., f 6 (quoting and citing § 6, ch. 326, Laws of 1957).

 Id., ¶ 7 (quoting and citing § 6, ch. 405, Laws of 1965).

 See id., ¶ 5.
The relevant text of Chapter 201 is as follows:
In each county having a population of five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes .... The funds of the retirement system shall be derived, administered and disbursed in accordance with the provisions of this act.

 Stoker, 359 Wis. 2d 347, ¶ 5 (quoting and citing ch. 138, Laws of 1945). See also id., ¶ 22.

 See Wis. Stat. § 990.01(1) (2011-12) ("All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."). All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated. See also Volvo Trucks N. Am. v. DOT, 2010 WI 15, ¶ 36, 323 Wis. 2d 294, 779 N.W.2d 423 ("Technical words or phrases in a statute should be given their technical or specialized meaning.").

 See majority op., ¶ 3, n.5. According to Black's Law Dictionary, a vested right is also one that is "complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs." Black's Law Dictionary 1564 (6th ed. 1990). The 1999 edition of Black's Law Dictionary defines vested as "a completed, consummated right for present or future enjoyment; not contingent, unconditional; absolute."

 Stoker, 359 Wis. 2d 347, ¶ 6 (quoting and citing § 6, ch. 326, Laws of 1957). See also id., ¶ 22.

 Stoker, 359 Wis. 2d 347, ¶ 7 (quoting and citing § 6, ch. 405, Laws of 1965). See also id., ¶ 22.

 Id., ¶¶ 24, 25, 27, 28, 29.

 § 1, ch. 405, Laws of 1965 (emphasis added).

 See Stoker, 359 Wis. 2d 347, ¶¶ 8, 10, 11, 12 (discussing Milwaukee County ordinances relating to MCERS).

 Stoker, 359 Wis. 2d 347, ¶ 48 (Bradley, J., dissenting).

 See majority op., ¶¶ 42-43.

 Loth v. City of Milwaukee, 2008 WI 129, ¶ 31, 315 Wis. 2d 64, 758 N.W.2d 766.

 Id., ¶ 43.

 Majority op., ¶¶ 42-43.

 Loth, 315 Wis. 2d 64, ¶ 31.

 For additional discussion of Welter v. City of Milwaukee, 214 Wis. 2d 485, 489, n.2, 13 N.W.2d 459 (Ct. App. 1997), see Justice Bradley's dissent in Stoker, 359 Wis. 2d 347, ¶¶ 51-52, 61.

 The precise benefit at issue in Welter was the police officers' right to the conversion age in effect when they were hired. The conversion age is the age at which a disabled police officer's retirement allowance is reduced from the more favorable Duty Disability Retirement Allowance level to the less favorable Service Retirement Allowance level.

 See Welter, 214 Wis. 2d at 489 n.2 (emphasis added).

 Id. at 491.

 Id.

 Id. at 494-95.

 The precise benefit at issue in Rehrauer was the firefighters' right to receive the Duty Disability Retirement Allowance for life rather than for a limited time.

 Majority op., ¶ 50.